[No. 2291]
## STATE OF NEVADA, RESPONDENT, v. GEORGE B. McFARLIN, APPELLANT.

[172 Pac. 371]

1. INDICTMENT AND INFORMATION—ELEMENTS.
   Embezzlement is a statutory crime, and all that is necessary in charging the offense is to follow the statute.

2. EMBEZZLEMENT—ELEMENTS—STATUTORY PROVISIONS.
   An information alleging that defendant was manager of a county-owned telephone system, and as such manager came into possession of certain money for transmission to the county treasurer, and feloniously converted it to his own use, sufficiently, charged embezzlement under Rev. Laws, 6653, as to misappropriation of corporation money by agent, manager, or clerk thereof.

3. EMBEZZLEMENT—EVIDENCE—BOOKS OF ACCOUNT.
   In prosecution of manager of county-owned telephone system for embezzlement, it was improper to introduce books of account of the system, where defendant was not familiar with the books and his attention had not been called to the particular accounts introduced.

4. EMBEZZLEMENT—EVIDENCE—GAMBLING.
   In prosecution of county official for embezzlement, it was improper to admit evidence that he played slot machines for trade checks to a limited extent.

5. CRIMINAL LAW—EVIDENCE OF OTHER OFFENSES—INSTRUCTIONS.
   In prosecution for embezzlement of certain money, the court should instruct as to the purpose for which other shortages might be considered by the jury.

6. CRIMINAL LAW—EVIDENCE OF OTHER OFFENSES.
   Evidence of other crimes can generally be considered only when it tends to establish motive, intent, absence of mistake or accident, a common plan or scheme, or identity.

APPEAL from Eighth Judicial District Court, Churchill County; *T. C. Hart*, Judge.

George B. McFarlin was convicted of embezzlement, and from the judgment, and denial of his motion for new trial, he appeals. **Reversed,** and new trial granted.

*E. E. Winters* and *Frame, Browne & Burrows*, for Appellant:

The facts stated in the information do not constitute a public offense. The information attempts to bring the case within the provisions of section 6653, Revised Laws,

but lacks the necessary allegations for that purpose. The gist of the offense, in so far as agents, managers, and employees are concerned, is the unlawful conversion to their own use of money entrusted to them by their employer. It is absolutely essential, under the provisions of our statute, that the trust relation exist between employer and employee; that is, first, that the employee be authorized to receive the money of his employer; second, that the employee actually receive the money as manager, agent, or clerk; and, third, that the money was entrusted to such employee by his master, or that the master had empowered him to collect such money, and that the same was received by the employee by virtue of the authority of the master. It is not sufficient that the manager, clerk, or servant be merely in the employ of the master, and while so employed receive the money. (*Ricord* v. *C. P. R. R. Co.*, 15 Nev. 167; *Ex Parte Ricord*, 11 Nev. 287; *People* v. *Bailey*, 23 Cal. 577; *People* v. *Shearer*, 143 Cal. 66.) Inferences, suppositions, or conclusions cannot be indulged in to aid an information or to take the place of direct and positive allegations required to be made either in the language of the statute or in equivalent language. (*State* v. *Logan*, 1 Nev. 110.) An indictment or information for embezzlement should allege the trust relation. (*People* v. *Shearer*, 143 Cal. 66.)

There is a clear distinction between the statement of a trial judge as to what the testimony of a certain witness was and his statement of his conclusion as to the ultimate fact established by the evidence. The trial court assumed the truth of all the facts stated by him in his reasons for admitting evidence. This is not permissible, and constitutes prejudicial error. (*People* v. *Bonds*, 1 Nev. 33; *State* v. *Hawkins*, 7 Nev. 377; *State* v. *Tickel*, 13 Nev. 511; *State* v. *Warren*, 18 Nev. 459; *Allen* v. *United States*, 115 Fed. 10; *Hawkins* v. *United States*, 3 Okl. Crim. 61; *People* v. *White*, 251 Ill. 75; *State* v. *Scott*, 37 Nev. 431.)

The lower court erred in admitting in evidence the books of the telephone company. The mere fact that defendant was manager of the company did not make the

books admissible in evidence against him, without proof first being made that the books were kept by him, or that they were in his handwriting, or that his attention was called to the portion of the books offered in evidence. "But entries in his books by others are not admissible, unless there is preliminary proof that his attention was called to them." (Underhill, Crim. Ev. sec. 291; *People* v. *Burnham*, 104 N. Y. Supp. 725; *Haynes* v. *Brown*, 36 N. H. 545; *Wheeler* v. *Walker*, 45 N. H. 355; *Rudd* v. *Robinson*, 26 N. E. 1046; *People* v. *Blackman*, 59 Pac. 573.)

It was error to admit evidence of alleged gambling by the defendant. Such evidence was irrelevant. (*People* v. *Vidal*, 53 Pac. 558; *People* v. *Rowland*, 12 Cal. App. 6.)

*Geo. B. Thatcher*, Attorney-General, and *G. J. Kenny*, District Attorney, for Respondent:

The information is sufficient, covers the requirements of the statute, and is sustained by recognized text-writers and by decisions of appellate courts. "When, therefore, the information charged the defendant with embezzling money of the company, received by him as its agent, and by virtue of his said employment, it did, in legal effect, charge him with embezzling money of the company intrusted to him as bailee by the company, which was precisely the crime described in the original complaint, and for which he was committed." (Bishop's New Crim. Proc., vol. 3, sec. 315; *People* v. *Walker*, 77 Pac. 705.)

It is a well-settled principle of law that books, and entries therein, made by third parties, are binding on the accused, if made under his direction. (15 Cyc. 531; *People* v. *Rowlands*, 106 Pac. 428.)

It was not error to admit the evidence as to appellant's propensity for gambling. Intent in embezzlement is always difficult to prove, and courts have properly and justly granted a broad and liberal scope in the matter. "Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the

slightest, to establish fraudulent intent on the one hand, or on the other hand to show the bona fides of the accused." (15 Cyc. 592.)

By the Court, COLEMAN, J.:

Appellant was convicted in the district court upon the charge of embezzlement, and appeals from the judgment, and from the order denying a motion for a new trial.

It was urged in the trial court that the information does not charge an offense, and the same objection is presented for our consideration. It is said that the information is bad, because (1) there is no allegation that the defendant was authorized to receive the money; (2) there is no allegation that the defendant was intrusted with the money by virtue of his employment; and (3) there is no allegation that defendant was, by virtue of his employment, charged with the duty of receiving the money. To sustain these contentions our attention is called to *Ex Parte Ricord,* 11 Nev. 287; *Ricord* v. *C. P. R. R. Co.,* 15 Nev. 167; *People* v. *Bailey,* 23 Cal. 577; *People* v. *Shearer,* 143 Cal. 66, 76 Pac. 813.

1, 2. Without undertaking to specifically point out wherein the cases mentioned are not in point, we think it sufficient to say that they were instituted under statutes unlike our present statute. Embezzlement is a statutory crime, and all that is necessary in charging the offense is to follow the statute. The statute under which the case was instituted is section 6653, Revised Laws, and that portion which is of importance in considering the objections urged reads as follows:

"Any agent, manager or clerk of any  *  *  *  corporation  *  *  *  with whom any money  *  *  *  shall have been deposited or intrusted, who shall use or appropriate such money  *  *  *  or any part thereof in any manner or for any other purpose than that for which the same was deposited or intrusted, shall be guilty of embezzlement.  *  *  *"

Omitting the formal parts of the information in question, it charges that the defendant—

"while then and there an employee of the county of

Churchill, a political subdivision of the State of Nevada, to wit, the duly appointed and acting manager of the Churchill County Telephone and Telegraph System, which said system being then and there exclusively owned and operated by the said county of Churchill, State of Nevada, and then and there, by virtue of said employment, as manager aforesaid, there came into the possession and under the control of said defendant, for transmission to the county treasurer of the said county of Churchill, State of Nevada, the sum of $556.02, lawful money of the United States, of the personal property of the said county of Churchill, State of Nevada, said sum, $556.02, lawful money, being public money received by said defendant for said county of Churchill, State of Nevada, during the month of March, A. D. 1916, while said public money and personal property were so in his possession and under his control by virtue of said employment as aforesaid, then and there, to wit, on the 31st day of March, A. D. 1916, or thereabout, said defendant did wilfully, feloniously, and unlawfully use, embezzle, and convert said sum of public money and personal property, received by him as aforesaid, for his own private purposes and for a purpose other than one duly authorized by law."

It will be seen that the information charges that the defendant was manager of the telephone system; that as such manager there came into his possession and under his control certain money, the property of Churchill County; that it came into his hands for a specific purpose, viz, for transmission to the county treasurer; that while the money was in his possession for that purpose he feloniously and unlawfully converted it to his own use. These allegations seem to fully comply with the requirements of the statute. We think that the information is good.

3. It is also urged that the trial court erred in overruling an objection to certain pages in the books of account of the telephone system, offered in evidence by the state. This objection should have been sustained,

and the failure to do so was prejudicial to the defendant. The defendant was not the bookkeeper, did not understand bookkeeping, was not familiar with the books, and his attention was never directed to the items on the pages introduced in evidence. It is a general rule that where an employee of a concern is on trial for embezzlement neither the books, nor portions of the books of the concern, which are not in the defendant's handwriting, are legal evidence against him, unless there be testimony tending to show that his attention was called to them and that he made some admission in regard to the portion offered in evidence. (*Lang* v. *State,* 97 Ala. 46, 12 South. 183.) In *People* v. *Burnham,* 119 App. Div. 302, 104 N. Y. Supp. 725, which was a case similar to the one at bar, it was said:

"There was also evidence admitted, against the objection and exception of the defendant, in relation to the entry in the books of the corporation respecting this payment, which was incompetent as against the defendant. He was not shown to have had anything to do with these books, or any knowledge of their contents, or any connection with the entries. The books of a corporation are not evidence as against an officer of the corporation in a criminal prosecution against him."

In *People* v. *Blackman,* 127 Cal. 248, 59 Pac. 573, where this identical question was before the court, it was said:

"A great many entries made in a great many books were offered and received, over the objection of defendant. It appeared that some of the entries were in the handwriting of defendant, and others were not. They were introduced, not only to show the receipt of money by the defendant, but also to show forced balances, and thereby to raise the presumption of guilt. The bookkeeper was not sworn as a witness, but they were merely shown to be books kept by the company. Bolton, the bookkeeper, at about the time the shortage was discovered, had committed suicide. The position of the learned judge of the trial court was stated by him:

'This is one of the books of the company. He is charged
by the by-laws and the custom of the company with the
keeping of the books. This book was presumably in his
custody and under his control. I don't care who kept it.
If there is anything wrong about it, that is for the
defense.' As a matter of course, this view is not insisted
upon here. The presumption of innocence would over-
come all the presumptions of knowledge and control, if
they existed; and it was for the prosecution to show
that the defendant was responsible for the condition of
the books, and in a criminal proceeding it is not enough
that it was his duty to know of their contents, and that
in a civil action they would be competent evidence
against him on that ground. He cannot be held for the
crime of embezzlement because he has negligently per-
formed his duty as secretary of the corporation, but
such consequence might result under the rulings of the
court. Most of the books were in the handwriting of
Bolton. It was not shown that defendant examined
them to see that they were correct, or, save by the pre-
sumption mentioned, that he knew anything about them."

See, also, *Rudd* v. *Robinson,* 126 N. Y. 113, 26 N. E.
1046, 12 L. R. A. 473, 22 Am. St. Rep. 816; *State* v.
*Carmean,* 126 Iowa, 291, 102 N. W. 97, 106 Am. St. Rep.
352; *People* v. *Rowland,* 12 Cal. App. 6, 106 Pac. 428.

4. It is next contended that the trial court should have
excluded the evidence offered relative to the defendant's
playing slot machines. The testimony shows no gam-
bling on the part of the defendant, other than by playing
slot machines for "bingles," which were good in trade
only, and the extent to which he is shown to have
indulged in the practice was not excessive. Under the
circumstances, we think the objection to this testimony
should have been sustained.

5, 6. Evidence of other shortages than that charged in
the information was admitted upon the trial of this case,
and in instructing the jury, before the case was sub-
mitted, the court gave, at the request of the counsel for
the defendant, the following instruction:

"The particular offense charged against the defendant is an alleged shortage occurring on or about the 31st day of March, 1916, and it is for that offense, and for that offense alone, that the defendant is on trial. While the testimony of other alleged shortages in the year 1916 have been admitted in evidence, it is only proper for you to consider such testimony in so far as the same tends to throw light upon the transactions of the month of March, 1916, as alleged in the information, and before you can convict the defendant of the offense charged in the information you must find from the evidence beyond a reasonable doubt that the offense alleged in the information was committed on or about the 31st day of March, 1916."

Some hours after the case had been submitted, the jury returned into court and made it clear that they did not fully understand the purposes for which they might consider the evidence of other shortages than that charged in the information.  After some discussion, the court instructed the jury orally as follows:

"Then, gentlemen of the jury, I will further instruct you, as to the instructions already given, that it is proper for you to consider all of the testimony, certainly, which is before you, and that you may and should take into consideration all of the testimony as submitted, whether it be concerning transactions that took place in 1916 or the year previous, in determining whether or not defendant is guilty of the charge contained in the information, but that you only take those things into consideration for the purpose of considering and determining whether the defendant is guilty of the charge as contained in the information and for no other purpose.

"I will say further, gentlemen, by way of instruction, that you cannot find the defendant guilty of any other charge than that contained in the information, but that, in determining whether or not he is guilty of the charge in the information, you are permitted and should take into consideration all of the evidence as to the circumstances and transactions during the time covered by the

testimony during the time not only of 1917, all of 1916, during the year 1916."

It is contended that the oral instructions given by the court, as quoted, were erroneous and misleading. We are of the opinion that the court should have instructed as to the purposes for which other shortages than that charged in the information might have been considered by the jury. It is the general rule that evidence of the perpetration of distinct crimes from those for which a defendant is being tried will not be considered. There are, however, exceptions to this general rule. In the well-known case of *People* v. *Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, this question was considered at length, and it was held that, generally speaking, evidence of other crimes might be considered only when it tends to establish either (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime for which the defendant is being tried. Such is, we think, the correct rule. (*Horn* v. *State,* 12 Wyo. 80, 73 Pac. 705; *Bond* v. *State,* 9 Okl. Cr. 696, 129 Pac. 666; *People* v. *Ruef,* 14 Cal. App. 576, 114 Pac. 54; *Williams* v. *State,* 4 Okl. Cr. 523, 114 Pac. 1114; *Rice* v. *People,* 55 Colo. 506, 136 Pac. 74; *People* v. *Rowland,* 12 Cal. App. 6, 106 Pac. 433.) No doubt, upon another trial of this case, the jury will be fully instructed as to the purpose for which evidence of other shortages than the one charged in the information may be considered.

The errors assigned to the refusal of the court to grant a new trial because of newly discovered evidence and the failure of the state to prove the venue we do not deem it necessary to consider, as these questions will not arise upon another trial.

For the errors pointed out, it is ordered that the judgment and order appealed from be reversed, and that a new trial be granted the defendant.

McCARRAN, C. J., concurring:

I concur.

In my judgment this case must be reversed for reasons in addition to those dwelt upon in the opinion of Mr. Justice COLEMAN. The force and effect of the error to which I refer is best understood when the record is made clear. The indictment charges:

"That said defendant, on the 31st day of March, A. D. 1916, or thereabouts, * * * at and within the county of Churchill, State of Nevada, while then and there an employee of the county of Churchill, a political subdivision of the State of Nevada, to wit, the duly appointed and acting manager of the Churchill County Telephone and Telegraph System, which said system being then and there exclusively owned and operated by the said county of Churchill, State of Nevada, and then and there, by virtue of said employment, as manager aforesaid, there came into the possession and under the control of said defendant, for transmission to the county treasurer of the said county of Churchill, State of Nevada, the sum of $556.02, lawful money of the United States, of the personal property of the said county of Churchill, State of Nevada, said sum, $556.02, lawful money, being public money received by said defendant for the said county of Churchill, State of Nevada, during the month of March, A. D. 1916, while said public money and personal property were so in his possession and under his control by virtue of said employment aforesaid, then and there, to wit, on the 31st day of March, A. D. 1916, or thereabouts, said defendant did wilfully, feloniously, and unlawfully use, embezzle, and convert said sum of public money and personal property, received by him as aforesaid, for his own private purposes and for a purpose other than one duly authorized by law."

During the course of the trial testimony was admitted of other shortages, as such were made to appear in the books of the telephone office. It must be presumed that the court admitted this testimony only under the well-

known exception to the rule excluding proof of crimes other than that of which the defendant stands accused.

The court, at the request of the defendant, gave the following instruction:

"The particular offense charged against the defendant is an alleged shortage occurring on or about the 31st day of March, 1916, and it is for that offense, and for that offense alone, that the defendant is on trial. While the testimony of other alleged shortages in the year 1916 have been admitted in evidence, it is only proper for you to consider such testimony in so far as the same tends to throw light upon the transactions of the month of March, 1916, as alleged in the information, and before you can convict the defendant of the offense charged in the information you must find from the evidence beyond a reasonable doubt that the offense alleged in the information was committed on or about the 31st day of March, 1916."

The case having been submitted to the jury, the record discloses that they appeared in court some hours later, at which time a colloquy took place between members of the jury and the court. In part it appears as follows:

"Foreman of the Jury—One or two members want to ask a few questions.

"The Court—Do you mean as to some feature of the testimony, or do you want additional instructions?

"Juryman—On instructions.

"The Court—As to some feature of the instructions?

"Juryman—In regard to using the evidence as introduced in the book, whether we should go to the last of the year or not in that book. I don't understand the instructions, whether we are to use the testimony as introduced by the books up to the last of the year. Perhaps I can make it a little plainer yet—whether the shortage claims to be monthly or just March; whether that can be traced up from month to month to tend to connect the shortage for the month of March; whether

it can be traced up to the end of the year or not. That is the misunderstanding, is it not?

"Jury—Yes.

"Mr. Frame (counsel for defendant)—I would suggest that the court call their attention to the instruction that covers that point.

"The Court—Of course, if the jury does not feel clear as to what the law is concerning any features, I think they should be given additional instructions; however, the court cannot give any further instructions, except in writing, except desired by counsel. If the plaintiff or defendant wishes to submit any additional instruction to the jury, I think the thing to do would be to pass upon those as presented, and then submit additional instructions if the jury does not feel clear. Of course, I am willing to follow the instructions of counsel.

"Mr. Frame—I was going to suggest that the court read to the jury the instructions already given on that point, and if not satisfactory, or the jury wants further information or any member of it, and indicates that, then we will know just what point, particular point, to address an instruction to."

Here it appears that the court read the instruction bearing upon this phase of the evidence, and then the colloquy continued:

"Juryman—That particular place that the difficulty arises in the minds of the jurors is whether that can be connected with any shortage during the month of March, can be traced from month to month up to the end of the year. Some of them are not clear—don't feel satisfied that they can go beyond the month of March.

"The Court—If counsel consents that any additional instruction can be given verbally or in writing as the law permits, you may insist on that.

"Mr. Frame—However, I would have no objection to the court orally explaining this instruction to the jury."

Whereupon the court proceeded as follows:

"Then, gentlemen of the jury, I will further instruct

you, as to the instructions already given, that it is proper for you to consider all of the testimony, certainly, which is before you, and that you may and should take into consideration all of the testimony as submitted, whether it be concerning transactions that took place in 1916 or the year previous, in determining whether or not the defendant is guilty of the charge contained in the information, but that you only take those things into consideration for the purpose of considering and determining whether the defendant is guilty of the charge as contained in the information and for no other purpose.

"Mr. Frame—And, if the court please, I desire to request the court at this time to add the further instruction to the one already given to the effect that the jury would not be justified in convicting the defendant of any—upon any shortage which is alleged to have occurred within some other month, or at some other time than March 31, 1916.

"The Court—I will say further, gentlemen, by way of instruction, that you cannot find the defendant guilty of any other charge than that contained in the information, but that in determining whether or not he is guilty of the charge in the information that you are permitted and should take into consideration all of the evidence as to the circumstances and transactions during the time covered by the testimony during the time not only of 1917, all of 1916, during the year 1916. Does that cover the point, gentlemen?

"Juryman—That covers the point, I think."

Undoubtedly this was the turning-point in the case, for it is disclosed that the jury returned in but a few minutes with a verdict of guilty. The oral instruction given by the court as to the evidence of other shortages was erroneous. The court used the significant language:

"You may and should take into consideration all of the testimony as submitted, whether it be concerning transactions that took place in 1916 or the year previous, in determining whether or not the defendant is guilty of the charge contained in the information."

And again the court said:

"In determining whether or not he is guilty of the charge in the information, * * * you are permitted and should take into consideration all of the evidence as to the circumstances and transactions during the time covered by the testimony, during the time not only of 1917, all of 1916, during the year 1916."

There is no rule of criminal jurisprudence to which the authorities have more tenaciously adhered than that which applies to proof of other crimes than that for which the defendant stands accused. The general rule in this respect, and that which has constituted an unalterable rule in American jurisprudence, is that, when one is put upon trial for an offense, if he is to be convicted at all, it must be only upon evidence which shows his guilt of that offense. To this rule there is a well-defined exception. This exception, it may well be stated, permits the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances tend to prove that the defendant has committed other crimes. The application of the exception of the admissibility of evidence must depend largely on the crime charged and the circumstances under which the same was committed. Evidence of this character, when the same is admitted by the trial court, calls for an instruction to the jury emphatically limiting the purpose for which such evidence may be considered by them. Evidence of other offenses than that charged in an indictment has been in all jurisdictions guarded against, and courts and text-writers have warned against the introduction of such, drawing attention to the havoc that may be wrought unless safeguarded by instruction clear and unequivocal.

By the language of the trial court here the jury was instructed, and that, too, at a point in their consideration when a misguiding word meant the fixing of the verdict, that in determining whether or not the defen-

dant was guilty of the charge in the information they should take into consideration all of the evidence as to the circumstances and transactions during the time covered by the testimony, during the years 1916 and 1917. The jury was told by the court that they should only take those things into consideration for the purpose of considering and determining whether the defendant was guilty of the charge as contained in the information, and for no other purpose. Here was a direction from the court that the jury should consider the evidence of other shortages to establish the shortage —hence the crime—of March 31, 1916. This instruction had a direct bearing upon a peculiar element of evidence, namely, the books of the telephone office; and here the observation in the opinion of Mr. Justice COLEMAN is most pertinent:

"The defendant was not the bookkeeper, did not understand bookkeeping, was not familiar with the books, and his attention was never directed to the items on the pages introduced in evidence."

Had the evidence been admissible at all, and we have held to the contrary in the opinion of Mr. Justice COLEMAN, it was proper that it should be accomplished by instructions designating and limiting the purpose for which it should be considered. In this respect it may be observed that such evidence is admissible, as I have already stated, and may be considered by the jury, for the purpose of establishing motive or purpose, or as proving a general plan or scheme followed or carried out by the accused.

"When such testimony is received," says the Supreme Court of Colorado, "the trial judge should then limit it to the purpose for which it is admitted. (*Jaynes* v. *People,* 44 Colo. 535, 99 Pac. 325, 16 Ann. Cas. 787.)