JUNO NEIL GARNER, Appellant, v. STATE OF NEVADA, Respondent.

No. 4484

JUNO NEIL GARNER, Appellant, *v*. RALPH LAMB, Sheriff of Clark County, Nevada, Respondent.

No. 4493

September 18, 1962                    374 P.2d 525

*James H. Phillips*, of Las Vegas, for Appellant.

*Charles E. Springer*, Attorney General; *John F. Mendoza*, District Attorney, and *William S. Barker*, Deputy District Attorney, Clark County, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Separate appeals by Garner, one from a judgment of conviction entered upon a jury verdict finding him guilty of the unlawful possession and control of a narcotic drug, Case No. 4484, and the other from the denial by the district court of his application for a writ of habeas corpus which was presented following his conviction, Case No. 4493. We believe the judgment of conviction must be reversed and the cause remanded for a new trial, because of prejudicial misconduct by the prosecuting attorney and the reception of inadmissible evidence. Therefore, we will first discuss Case No. 4484.

Before making specific reference to the prosecutor's remarks and the evidence erroneously admitted, a brief statement setting forth circumstances of legal significance is necessary in order to place the issues in proper perspective. Garner acted as his own attorney during the jury trial below, having voluntarily waived his right to counsel. He failed to object to the remarks of the prosecutor and to the introduction of inadmissible evidence. The trial judge did not admonish the

jury to disregard such remarks and evidence, nor did he take any other action with reference thereto. Garner did not testify. There is substantial evidence to prove Garner's possession of a narcotic drug. Whether such possession was lawful or unlawful is disputed, but we need not resolve that question. After the judgment of conviction, the trial court appointed counsel for Garner to assist in these appeals. Thus, Garner's complaint regarding the remarks of the prosecutor and the reception of inadmissible evidence is raised initially on appeal. With these circumstances in mind, we turn to relate the remarks and evidence to which we have referred.

During his opening statement to the jury the prosecutor, in relating what he intended to thereafter prove, said, among other matters: "The first witness will be an important witness here, he will be Officer Hilliard. Officer Hilliard sees the defendant in West Las Vegas rather shabbily dressed and in a disorderly manner. At this time he didn't know anything. He goes back to the Police Station, though, looks up Mr. Garner's record, and there is reason to be suspicious from his prior record and what not. So, he goes back over to West Las Vegas, says to Mr. Garner, 'I have seen your record' and what not, and in effect 'may I search your person?'" Officer Hilliard, to whom the prosecutor had referred in his opening statement, was the first witness called by the state. The following questions and answers appear in the record.

"Q. In other words, did you call to the Las Vegas Police Station?

"A. Yes, I did.

"Q. What did you find out pursuant to that radio call?

"A. I was able to ascertain that the subject was registered with our Department, Las Vegas Police Department, as an ex-felon. He had a lengthy criminal record, such as armed robbery, abortion, and so forth.

"Q. Were you able to determine whether these were convictions, or only accusations?

"The Court: I will have to admonish you, Mr. Bowman, to be careful.

"A. These were convictions for previous felonies."

Later during his testimony Officer Hilliard was asked:

"Q. Well, after you talked to him and searched his person, then what did you do, Officer?

"A. Due to the fact my suspicions were aroused by his criminal record, the fact he was in an area carrying this medicine without a bag, I transported subject to Detective Bureau for further disposition."

Later on during the presentation of the state's case in chief, a member of the State Board of Osteopathic Examiners, in explaining the revocation of Garner's Nevada license as an osteopath, said: "The automatic reason that we had been attempting to serve notice was that he had been convicted of a felony in December of 1942, which would automatically void his Nevada license, if he could be notified. * * *." The record further discloses that the same witness, in testifying about the contents of a letter sent Garner, said: "I believe that it was worded that this was his official notification to appear before the Board September 17 to show cause why his license should not be revoked because of, and then the enumeration of: Number one, conviction of a felony; number two, practice, type of practice in California and Florida; number three, persistent police record."

Finally, during summation to the jury, the prosecutor again mentioned that Garner's "crime record" had been ascertained.

The state does not assert that evidence of other offenses committed by Garner was admissible. It acknowledges the general rule of criminal evidence that, on the trial of a person accused of crime, proof of a distinct independent offense is not admissible. It concedes that the evidence heretofore set out does not come within any exception to the general rule. Cf. Nester v. State, 75 Nev. 41, 334 P.2d 524; State v. McFarlin, 41 Nev. 486, 172 P. 371. However, the state does urge that the statements of the prosecutor and the evidence of other offenses were introduced into the case without objection by the defendant and he thereby waived any right to have the points considered on appeal. In any

event, it insists that NRS 169.110, the "harmless error" statute, must be given effect because of other competent evidence in the record establishing Garner's guilt beyond a reasonable doubt. On the other hand, Garner contends that the forensic misconduct of the prosecutor in opening statement and closing jury argument, in making reference to other offenses, together with the introduction of evidence concerning them, precluded any possibility of a fair trial being accorded him. He urges that the jury must have been influenced by the continual reference to his record of crime, particularly in view of the fact that the other evidence in the case does not conclusively establish that his possession of narcotics was unlawful.

We are appalled by the consummate disregard of the defendant's right to a fair trial. The duty of the prosecutor is beautifully expressed by the Supreme Court of the United States in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, in the following language:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongul conviction as it is to use every legitimate means to bring about a just one." See also State v. Rodriguez, 31 Nev. 342, 347, 102 P. 863.

After the jury has been selected and sworn, every criminal trial has three general phases—the opening statement, the proof and the summation. In the case at

bar, the prosecutor struck "foul blows" during each phase. The purpose of the opening statement is to acquaint the jury and the court with the nature of the case. It is proper for the prosecutor to outline his theory of the case and to propose those facts he intends to prove. State v. Olivieri, 49 Nev. 75, 236 P. 1100. However, it is his duty to state such facts fairly, and to refrain from stating facts which he will not be permitted to prove. State v. Olivieri, supra; Sefton v. State, 72 Nev. 106, 295 P.2d 385; State v. Erwin, 101 Utah 365, 120 P.2d 285. We know that appellate courts will not usually predicate error on a statement to the jury that certain proof, which is later rejected, will be offered if the question of its admissibility is a close one, thus indicating that the prosecutor acted in good faith in making the statements. State v. Lyskoski, 47 Wash.2d 102, 287 P.2d 114; State v. Albert, 159 Ore. 667, 82 P.2d 689. In Olivieri, supra, the "good faith" guide was recognized and the court, upon the record there presented, found nothing to indicate that the prosecutor acted in bad faith in overstating what he intended to prove.[1] Indeed, in Olivieri there was a failure of evidence, i.e., the state offered no evidence to establish the verity of the prosecutor's representation that the accused, shortly before shooting the prosecuting witness, was intoxicated and in a reckless or vicious humor, desired trouble, and was armed. The proof offered did not measure up to the statement made. It was a situation where improper matters were placed before the jury without having the misconduct discovered until a later phase of the trial. The misconduct there involved could not be immediately apparent to either the court or opposing counsel and was much less severe in character.

In the case before us we have an entirely different situation. The improper reference to the defendant's prior criminal record must have been at once apparent

[1]See also dictum, State v. Fronhofer, 38 Nev. 448, 465, 150 P. 846, 851, where the court said, inter alia, "* * * there is nothing to indicate that he was attempting to take any undue advantage of the defendant."

to the court. The court failed to act. The misconduct, understandably, was not apparent to the defendant who was without counsel. Accordingly, he failed to object. Furthermore, we must *presume* knowledge in the prosecutor that the defendant's record of crime, convictions for armed robbery and abortion, would not, under any rule of evidence, be admissible during the presentation of the state's case in chief. Notwithstanding such knowledge, reference to the defendant's record was made at the very outset of the trial and before the first witness was sworn to testify! Such forensic misconduct does not meet the "good faith" guide mentioned in Olivieri. Finally, the impact of such information upon the jury cannot be overlooked. To do so would be to ignore human experience.

The misconduct during the opening statement and again during summation was mild when compared to the repeated introduction of testimony upon the subject of the defendant's prior felony convictions and persistent police record. The state has hinted that each occurrence may have been a "spontaneous blurt," inadvertent and a surprise to all except the witness testifying. Cf. State v. Varga, 66 Nev. 102, 123, 205 P.2d 803, 813. We reject any thought of such having been the case. The question asked Officer Hilliard during trial, which prompted his ready exposition regarding Garner's record, was first asked at the preliminary hearing and about the same answer given. The prosecutor announced in his opening statement that he would call Hilliard as a witness and that the officer's investigation of Garner's record caused suspicion. Hilliard was then put on the stand and testified as heretofore related, to be followed by others who did the same. It thus appears that not a single "blurt" was spontaneous or inadvertent.

1. *The court should have intervened sua sponte.* We are asked to ignore the accumulation of error. We are told that we need not concern ourselves with it, for no objection was interposed during trial. As a general rule,

the failure to object, assign misconduct, or request an instruction, will preclude appellate consideration. Cook v. State, 77 Nev. 83, 359 P.2d 483; O'Briant v. State, 72 Nev. 100, 295 P.2d 396; Kelley v. State, 76 Nev. 65, 348 P.2d 966; State v. Moore, 48 Nev. 405, 233 P. 523; State v. Boyle, 49 Nev. 386, 248 P. 48. However, where the errors are patently prejudicial and inevitably inflame or excite the passions of the jurors against the accused, the general rule does not apply. The errors here involved are of that kind. An accused, whether guilty or innocent, is entitled to a fair trial, and it is the duty of the court and prosecutor to see that he gets it. State v. Haney, 222 Minn. 124, 23 N.W.2d 369. The forensic misconduct and reception of inadmissible evidence in the case at bar was so serious and flagrant as to require court intervention to protect the defendant's right to a fair trial. State v. Cyty, 50 Nev. 256, 256 P. 793, 52 A.L.R. 1015; State v. Gulbrandsen, 238 Minn. 508, 57 N.W.2d 419. We are in accord with the observation of the California Supreme Court in People v. Perez, 23 Cal.Rptr. 569, 581, 373 P.2d 617, 629: "True, in some instances, no objection was interposed. However, we feel that the foregoing course of conduct was so improper and so offensive to the requirement that the question of guilt or innocense shall be determined by an orderly legal procedure in which the rights of both the People and the defendant shall be respected, that the trial judge should have intervened without waiting for an objection."

We hold that in a trial before a jury of one accused of crime and who is not represented by counsel, the repeated reference by the prosecutor and his witnesses to inadmissible prior felony convictions of the defendant, may be considered on review, notwithstanding the defendant's failure to object during trial, assign such misconduct as error, request an appropriate instruction, or otherwise act to protect his right to a fair trial. Having thus determined that we may consider the appellant's complaints of error in this regard, we now direct our attention to a consideration of NRS 169.110, the "harmless error" statute.

2. *The errors are not "harmless."* NRS 169.110 provides: "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right." Manifestly, the determination of whether an error in the trial of a criminal case is harmless or reversible is largely subjective.

The reports are full of appellate decisions criticizing prosecutor misconduct and indicating error. However, the important question is whether such error is to be found prejudicial and reversible or merely harmless. In the language of the statute, did the error or errors result in a miscarriage of justice or actually prejudice the defendant in respect to a substantial right? As it is impossible for a reviewing court to examine the minds of the jurors we look to other influential factors in exercising the discretion which the statute grants. If the issue of guilt or innocence is close, if the state's case is not strong, prosecutor misconduct will probably be considered prejudicial. In State v. Kassabian, 69 Nev. 146, 148, 243 P.2d 264, 265, the court observed: "In close cases of this character where counsel's argument to the jury by virtue of the uncertain state of the evidence is magnified in importance, the importance of avoiding the misleading of the jury and of avoiding undue appeals to sympathy, passion and prejudice are likewise magnified." On the other hand, if the evidence of guilt is overwhelming, the misconduct or reception of inadmissible evidence will sometimes be considered harmless. In State v. Skaug, 63 Nev. 59, 66, 161 P.2d 708, 711, 163 P.2d 130, it was stated: "Hence, in the presence of such enormous and clearly proven guilt we will not pause to speculate as to whether, if evidence

of other offenses had been omitted the jury might have returned a verdict carrying a lesser penalty."

Furthermore, the quantity of error is significant. It is apparent the repeated instances of misconduct and the accumulation of error are more serious than isolated breaches. State v. Teeter, 65 Nev. 584, 200 P.2d 657, involved such an accumulation of error, and a reversal occurred. In State v. Petty, 32 Nev. 384, 108 P. 934, however, a single error was excused as harmless. The character of the error involved is very important. Certain "off limit" statements by the prosecutor are more harmful than others. Some expressions clearly tend to influence or prejudice a jury, while others would not. In this regard compare State v. Rodriguez, 31 Nev. 342, 102 P. 863, with the later decision of State v. Petty, supra, where this factor was recognized. And, of course, the gravity of the crime charged appears to be a relevant consideration. Some appellate courts assign greater significance to errors committed in capital cases than to errors occurring in trials for lesser offenses. Finally, there lurks beneath the surface a policy consideration, namely, the supervisory function of the appellate court in maintaining the standards of the trial bench and bar, to the end that all defendants will be accorded a fair trial.

Other considerations may also be relevant. The foregoing, however, have been most frequently announced by appellate courts faced with the "harmless error" problem. The very nature of the problem forbids a pronouncement of a hard and fast rule, nor does the statute contemplate such a result. The facts and circumstances of each case must be honestly weighed and evaluated.

In reviewing the record of the present case, it is evident that the defendant was prejudiced in respect to a substantial right, his right to a fair trial. Though his possession of narcotics was proven beyond reasonable doubt, and admitted by him to witnesses, the evidence

is uncertain as to whether such possession was lawful or unlawful. Garner claimed lawful possession as a licensed osteopath. In deciding whether his claim had validity, the jury may well have been influenced by the forensic misconduct and reception of inadmissible evidence heretofore related. There was an accumulation of error. The very nature of it (reference to prior felony convictions and a persistent police record) is inherently harmful to the rights of one facing a charge of crime. We deem appropriate the following language of Judge Jerome Frank in a dissenting opinion, United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, 661: "This court has several times used vigorous language in denouncing government counsel for such conduct as that of the United States Attorney here. But, each time, it has said that, nevertheless, it would not reverse. Such an attitude of helpless piety is, I think, undesirable. * * * If we continue to do nothing practical to prevent such conduct, we should cease to disapprove it. For otherwise it will be as if we declared in effect, 'Government attorneys, without fear of reversal, may say just about what they please in addressing juries, for our rules on the subject are pretend-rules. * * *. The deprecatory words we use in our opinions on such occasions are purely ceremonial.' Government counsel, employing such tactics, are the kind who, eager to win victories, will gladly pay the small price of a ritualistic verbal spanking."

We conclude that the judgment below must be, and is reversed, the sentence vacated, and the cause remanded for a new trial. The custody of Juno Neil Garner shall be transferred from the warden of the Nevada State Prison to the sheriff of Clark County, Nevada, to be held by the latter until and during such new trial or further order, judgment or commitment of the trial court, unless sooner admitted to bail.

The appeal in Case No. 4493, the habeas corpus proceeding, involves questions for which the remedy of appeal is appropriate. Indeed those questions were presented by the appeal in Case No. 4484. There being

no lack of jurisdiction in the district court to enter the judgment of conviction, its action in denying Garner's application for a writ of habeas corpus is affirmed.

BADT, C. J., and McNAMEE, J., concur.