DALE ARDEN MATHIS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5085

November 4, 1966        419 P.2d 775

*Albert Matteucci,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, *Edward G. Marshall,* District Attorney, and *James D. Santini,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, COLLINS, J.:

Appellant was convicted by a jury of attempted grand larceny, a felony. He appeals from the conviction and the trial court's refusal to grant a new trial. He urges as error the lack of evidence to prove intent; failure to prove an extraneous or hindering cause which impeded the ultimate commission of the crime; failure of the state to endorse on the *indictment* names of witnesses to be called; and prejudice resulting from evidence admitted of a separate and distinct offense. The errors urged are without merit and we sustain the conviction.

The record discloses that appellant and Sanford Wara inquired at the Conditioned Air Company office, Las Vegas, Nevada, about air conditioning equipment. Shortly after leaving, they were observed by Conditioned Air Company employees looking into the adjoining equipment yard of Air Conditioning, Inc., victim in this case. Later that afternoon both returned to the office of Conditioned Air Company and inquired about the time in the morning it opened for business. A secretary's suspicions were aroused and she called the Las Vegas police who assigned two officers as a stakeout for both equipment yards. About 6:25 a.m. the next morning the two officers observed appellant and Wara drive up to the gate of Air Conditioning, Inc., yard in a rented truck and both got out. After looking around, Wara cut the lock on the gate with boltcutters, while appellant looked on. Neither entered the yard but returned to the truck. The officers lost sight of them for about five minutes, but then observed them inside the yard of an adjoining air conditioning company, loading equipment in the truck. They were later arrested nearby with stolen air conditioning equipment in their possession on the truck. Further examination by the officers revealed that

a chain locking the gate of the yard where the equipment was taken had also been cut with a boltcutter.

At the trial witnesses, whose names were not endorsed on the indictment, were called by the state and allowed by the court to testify. The indictment had subscribed on it only the names of witnesses who testified before the grand jury.

During the trial the prosecution offered evidence of a separate and distinct crime, grand larceny of the adjoining air conditioning company from which the equipment was taken. Objection was made to this evidence by appellant who cited Nester v. State, 75 Nev. 41, 334 P.2d 524 (1959). The trial judge sustained the objection after a hearing out of the jury's presence. During this hearing the prosecution sought to have clarified what, if anything, the witness could testify to regarding the separate offense. Appellant's counsel made a suggestion as to the evidence but the trial judge stated, "I'm not going to anticipate my rulings. You make the objections and I'll rule on them when the objections are made. What do you want to do? Bring the jury in?"

Thereafter evidence of the separate and distinct offense crept in through testimony of several state's witnesses; but no further objection was made by defense counsel, who argues his objection was a continuing one as to all such evidence. Nevertheless he cross-examined the state's witnesses on the separate and distinct offense and during the trial stipulated with the prosecuting attorney that appellant would be tried on the grand larceny charge at a later date. Appellant offered no evidence or witnesses on his own behalf but argued that the state had failed to prove its case. The jury convicted appellant of the crime charged. No instruction was requested or given on the law of separate and distinct offenses, nor was objection made on further instructions requested by appellant.

The early Nevada case, State v. Thompson, 31 Nev. 209, at 216, 101 P. 557 (1909), clearly sets forth the elements of attempt to commit a crime. They are:

"First—The intent to commit the crime. Second—Performance of some act towards its commission. Third—Failure to consummate its commission." At page 217 of that case it is further stated, "As in any other case where the intent is material, the intent need not be proved by positive or direct evidence, but may be inferred from the conduct of the parties and the other facts and circumstances disclosed by the evidence." It has not been urged by appellant that he was anything but a principal in the commission of the crime. NRS 195.020[1] defines principals. Appellant clearly fits within that definition. Appellant argues there was no overt act on his part shown from the evidence and that as a matter of law there was insufficient evidence of an extraneous or hindering cause which impeded or hindered the ultimate commission of the crime of larceny.

The overt act is clear. Wara cut the lock with bolt-cutters. Our law does not require evidence of an extraneous or intervening cause preventing commission of the completed crime. All that must be shown is failure to consummate its commission. State v. Thompson, supra. For a reason known only to appellant and his accomplice, after cutting the lock, they returned to the truck and drove off. A case greatly in point is People v. Walker, 33 Cal.2d 250, 201 P.2d 6 (1948). There a defendant was found guilty of murder in the first degree for killing a police officer in the attempted perpetration of a burglary. The California court said, at page 10, "At the time of the murder defendant had already snipped

[1]"195.020 Who are principals. Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

the bolt on the door of the meat market and replaced the lock, and he was scouting the neighborhood to see that the coast was clear; in other words, he was in the process of completing his attempted burglary after commission of a definite overt act."

Appellant complains it was prejudicial error for the trial court to allow witnesses to testify whose names were not endorsed on the indictment. He cites NRS 173.080[2] and NRS 173.110[3] and contends they are interchangeable. We have not ruled upon this point before but feel it has no merit. The statutes require an information to conform "as near as may be" to the indicment, but the converse is not required nor are they made expressly interchangeable. We perceive no error.

The last issue, namely admission of evidence of a separate and distinct offense, causes us some concern. Generally it is not admissible. Garner v. State, 78 Nev.

---

[2]"173.080 District Attorney or his deputy to be informant; endorsement of names of witnesses; affidavits.

"1. All informations shall be filed in the court having jurisdiction of the offenses specified therein, by the district attorney of the proper county as informant, and his name shall be subscribed thereto by himself or by his deputy.

"2. He shall endorse thereon the names of such witnesses as are known to him at the time of filing the same, and shall also endorse upon such information the names of such other witnesses as may become known to him before the trial at such time as the court may, by rule or otherwise, prescribe; but this shall not preclude the calling of witnesses whose names, or the materiality of whose testimony, are first learned by the district attorney upon the trial.

"3. In all cases in which the defendant has not had or waived a preliminary examination there shall be filed with the information the affidavit of some credible person verifying the information upon the personal knowledge of affiant that the offense was committed."

[3]"173.110 Law applicable to indictment applies to information. All provisions of law applying to prosecutions upon indictments, to writs and process therein and the issuing and service thereof, to motions, pleadings, trials and punishments, or the passing or execution of any sentence, and to all other proceedings in cases of indictment, whether in a court of original or appellate jurisdiction, shall to the same extent and in the same manner, as near as may be, apply to informations and to all prosecutions and proceedings thereon."

366, 374 P.2d 525 (1962). There are certain exceptions which are set forth in detail in Tucker v. State, 82 Nev. 127, 412 P.2d 970, at 971 (1966). Even if the evidence is deemed to be admissible the trial court must be convinced that its probative value outweighs its prejudicial effect. Tucker v. State, supra, at 971, and if admitted, the trial court must inform the jury that they may consider it only for the limited purpose for which it is admitted. Brown v. State, 81 Nev. 397, 404 P.2d 428 (1965); State v. Monahan, 50 Nev. 27, 249 P. 566 (1926); State v. McFarlin, 41 Nev. 486, 172 P. 371 (1918). The record fails to demonstrate any of these requirements were followed. The evidence just "snuck" in, after the trial court had ruled it inadmissible, but *without objection* by defendant, even though he was specifically put on notice by the court that it would not "anticipate any rulings on objections" to such evidence. We thus need not consider it now. Cook v. State, 77 Nev. 83, 85, 359 P.2d 483 (1961); O'Briant v. State, 72 Nev. 100, 295 P.2d 396 (1956); Kelley v. State, 76 Nev. 65, 348 P.2d 966 (1960); State v. Boyle, 49 Nev. 386, 248 P. 48 (1926); State v. Moore, 48 Nev. 405, 233 P. 523 (1925). Moreover, after the state offered such evidence, during direct examination of its witnesses, the defendant cross-examined at length upon it. Finally the defendant sought and received a stipulation from the state in open court before the jury that he was to be tried at a later date for the same separate and distinct offense, namely grand larceny.

The trial court had no duty, under these circumstances, to intervene *sua sponte*. Garner v. State, 78 Nev. 366, 372, 374 P.2d 525 (1962).

Affirmed.

THOMPSON, J., and ZENOFF, D. J., concur.