ISAIAH GRANT, III, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 34885

June 13, 2001

24 P.3d 761

*Morgan D. Harris,* Public Defender, and *Darin F. Imlay,*
Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart
L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy
District Attorney, Clark County, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

*Per Curiam:*

A jury convicted appellant, Isaiah Grant, III, of one count of category C grand larceny and one count of possession of a controlled substance. The district court sentenced Grant to a prison term of fourteen to thirty-six months on the grand larceny charge and to a concurrent term of twelve to forty-eight months on the possession charge with 230 days credit given for time served.

On appeal, Grant asserts four assignments of error: (1) the district court erred by admitting Officer Brown's preliminary hearing testimony into evidence; (2) the district court erred by *sua sponte* amending the grand larceny charge from category B to category C; (3) the State violated *Batson v. Kentucky*[1] by improperly striking an African-American venireperson; and (4) the State adduced insufficient evidence of intent on both the grand larceny and the possession of a controlled substance charges. We conclude that the State failed to exercise due diligence in obtaining Brown's presence at trial, rendering the admission of his testimony improper. However, because we conclude that this error was harmless and all of appellant's remaining contentions lack merit, we affirm the judgment of conviction.

## *FACTS*

On January 8, 1999, Therese Wilson was playing the slot machines at the Bellagio in Las Vegas when she left her black crochet purse on the stool and walked to the change machine about ten to twelve feet away. When she returned, her purse was missing and she noticed a man, later identified as Grant, walking away from the slot machines carrying her purse. She yelled, and Grant turned around but continued walking away. Wilson then notified Bellagio security.

Bellagio Security Officer Wayne Kimi testified at trial that he arrived and spoke with Wilson. She described the man who took her purse as an African-American male, five feet nine inches tall, mid-twenties, about 135-150 pounds, slim build, and wearing a

---

[1]476 U.S. 79 (1986).

black jacket and pants. She then told Kimi that she had several thousand dollars in cash and some jewelry in her purse. After receiving several false calls identifying the man, Wilson and Kimi were called to the main lobby to identify a potential suspect. When she arrived in the lobby, she identified Grant, who was sitting on a couch holding a drink, as the man she saw taking her purse.

Security Officer Raymond Brown joined Kimi and Wilson in the lobby. Brown testified at the preliminary hearing that he noticed a black purse on the couch next to Grant, and saw Grant digging into his jacket.[2] Brown and Kimi testified that they approached Grant and noticed him stuffing something into his jacket as they neared. Brown began talking to Grant, lifted Grant's jacket, and revealed Wilson's purse.

A struggle ensued between Brown and Grant, and Grant was pushed to the ground. The surveillance tape indicated that one of the security officers picked something up off the ground and placed it in Grant's right pocket after they had seized him; however, it was unclear what the item was and whether it fell out of Grant's pocket. Brown then took Grant back to a security room to hold him until the Las Vegas Metropolitan Police arrived. Kimi remained with Wilson.

In the security room, Brown testified that he searched Grant and found two partially smoked marijuana cigarettes. Various security personnel at the Bellagio testified that they were in the room at various stages and observed the money and marijuana found on Grant lying on the adjacent table. No one else was in the room during the actual search. Police Officer Scott Baker testified that Grant admitted that the cigarettes were his, but stated that he did not think he should go to jail for such a small amount. The surveillance tape indicated that when Brown left Grant alone for a few minutes, Grant removed $600 from his pants. Nothing else was found on Grant at his arrest.[3]

Security Officer Bernardo Figuredo testified at trial based on his observations of the security tape of the events both before and after Grant's arrest. He testified that he observed Grant walking toward the row of slot machines where Wilson's purse was located. He then viewed an arm taking the purse off the slot machine stool, and a few seconds later he saw Grant walking quickly out of that aisle with something under his left arm.

---

[2] Security Officer Raymond Brown testified solely at the preliminary hearing and was unavailable to testify at trial. The propriety of the district court's admission of Brown's prior testimony at trial is at issue in this appeal.

[3] The district court noted that there was some confusion in the testimony and police reports as to exactly how much money was found in the purse and in Grant's possession. Ultimately, the district court concluded that about $1,800 total was found in Grant's possession at his arrest.

Figuredo also testified that he saw Grant walking toward the front door of the lobby fifteen minutes later. He then observed Grant turn, walk over to the couch, reach into his jacket and put something in his pants. A few minutes later, Figuredo observed Brown and Kimi approach Grant, and his testimony corroborated their depictions of the event and arrest.

The State filed a criminal complaint charging Grant with one count of category B grand larceny (value exceeding $2,500) and one count of possession of a controlled substance. At the preliminary hearing, Grant argued that the State failed to adduce sufficient evidence of value exceeding $2,500 to support the charge, and that therefore the charge should be dismissed.

Grant filed a petition for a pretrial writ of habeas corpus. In its return, the State argued that should the district court agree with Grant, the district court should amend the information to the lesser charge of category C grand larceny (value exceeding $250). The district court denied Grant's motion for an outright dismissal, but found insufficient evidence of value exceeding $2,500, and therefore amended the information to a category C larceny charge.

On the day set for trial, the State filed a motion to admit Officer Brown's preliminary hearing testimony because Brown was on vacation and unavailable for trial. The district court granted the motion and permitted Brown's testimony to be read into evidence. The jury returned a guilty verdict on both counts.

At the voir dire examination, Grant challenged the State's peremptory challenge of juror no. 579 as being racially motivated. Juror no. 579 was one of only three African-Americans in the venire, two of whom the State struck with peremptory challenges.[4] The State countered that it excluded juror no. 579 because he was too ''wishy-washy'' and did not have sufficient leadership to adequately serve on the jury. The district court found this to be a racially neutral reason and denied Grant's *Batson* challenge. This timely appeal followed.

## DISCUSSION

Grant contends that admission of Officer Brown's testimony into evidence under NRS 171.198(6) and NRS 174.125 was error. We agree.

NRS 171.198(6) permits the State to admit a witness's prior testimony if the defendant was represented by counsel at the prior proceeding and the witness is sick, dead, out of state, persistently

---

[4]Grant does not challenge the peremptory strike of the other venireperson in this appeal.

refuses to testify, or his attendance cannot otherwise be had at trial. This court has determined that the admission of prior testimony comports with the requirements of the Sixth Amendment of the United States Constitution provided that defense counsel had the opportunity to, and in fact did,[5] thoroughly cross-examine the witness, and the witness was actually unavailable for trial.[6] However, under NRS 174.125 the State must file a motion requesting the admission of prior testimony within fifteen days before trial unless the State was unaware of the witness or the need for the testimony did not exist before that time period. Under *Drummond v. State,* the State's attempts to obtain the witness's presence in order to meet this time requirement must be in good faith and with due diligence.[7]

We conclude that the State did not act with due diligence or in good faith in timely obtaining Officer Brown's presence at trial. The State never served Officer Brown with a subpoena. The State merely sent several subpoenas to the Bellagio for distribution to its employees. The State also provided no indication that they had called Brown at home, called his family or friends, or otherwise attempted to contact Brown to ensure he would be available for trial. Had the State attempted to complete personal service, as required under NRS 174.345(1), it could have known earlier that Brown would be unavailable. Then, it could have complied with the time provisions of NRS 174.125. Instead, the State sent the subpoena to a third party and awaited the results. This is not proper or diligent service, and therefore cannot establish that

---

[5]*California v. Green,* 399 U.S. 149, 165-66 (1970), suggests that actual cross-examination is unnecessary to comply with Confrontation Clause requirements; merely an adequate opportunity to cross-examine is sufficient. However, in that case, the defendant actually cross-examined the witness at the prior proceeding and the Court did not reach whether this requirement should be revised. *Green,* 399 U.S. at 165-66. The United States Supreme Court further suggested that actual cross-examination is not required in *Ohio v. Roberts,* 448 U.S. 56, 70-71 (1980), but did not reach the issue directly since actual cross-examination had occurred.

In Nevada, cases citing to *California v. Green* and *Ohio v. Roberts* rely on them for the proposition that cross-examination is required for Confrontation Clause purposes and do not further indicate that mere opportunity is sufficient. *See, e.g., Power v. State,* 102 Nev. 381, 724 P.2d 211 (1986); *Dias v. State,* 95 Nev. 710, 601 P.2d 706 (1979); *Sparkman v. State,* 95 Nev. 76, 590 P.2d 151 (1979); *Maginnis v. State,* 93 Nev. 173, 561 P.2d 922 (1977). In addition, whether mere opportunity is sufficient has not been addressed since in most cases, the witness was actually cross-examined. *See Power,* 102 Nev. at 382, 724 P.2d at 211. *Drummond v. State,* 86 Nev. 4, 462 P.2d 1012 (1970), has not been overruled by either *California v. Green* or *Ohio v. Roberts.* Moreover, we need not reach this distinction in this case because Grant actually cross-examined Brown at the preliminary hearing.

[6]*See Drummond,* 86 Nev. at 7, 462 P.2d at 1013-14 (citing *Barber v. Page,* 390 U.S. 719 (1968) and *Berger v. California,* 393 U.S. 314 (1969)).

[7]86 Nev. at 6-8, 462 P.2d at 1013-14.

Brown was unavailable for trial.[8] Accordingly, the district court erred in granting the State's motion to admit Brown's prior testimony.

Even though Brown's testimony was erroneously admitted at trial, we conclude that such error was harmless.[9] Brown's testimony was duplicative of the other security personnel's testimony regarding Grant's arrest and finding the purse, money and marijuana on Grant. Sufficient evidence existed in Figuredo's, Baker's, and Kimi's testimony to support Grant's convictions without Brown's preliminary hearing testimony. Because Grant's conviction did not rest solely, or even rely on, Brown's preliminary hearing testimony, we conclude that the admission of this testimony was harmless error.

Grant also contends that the district court erred by *sua sponte* amending his grand larceny charge from category B to category C.[10] Although the district court may not generally amend a criminal information except by the State's motion,[11] if one of the parties raises the issue of amendment in the pleadings, such as a return to a writ of habeas corpus, the court may *sua sponte* order the amendment of the criminal information.[12] As long as the amended information does not involve new or different offenses, and the defendant is not prejudiced, the amendment may be granted.[13]

---

[8]*See, e.g., Drummond,* 86 Nev. at 6-8, 462 P.2d at 1013-14; *Joseph John H., a Minor v. State,* 113 Nev. 621, 939 P.2d 1056 (1997) (good cause for continuance in juvenile proceedings); *Quillen v. State,* 112 Nev. 1369, 929 P.2d 893 (1996); *Sheriff v. Simpson,* 109 Nev. 430, 851 P.2d 428 (1993); *Bustos v. Sheriff,* 87 Nev. 622, 491 P.2d 1279 (1971) (good cause for continuance); *Hill v. Sheriff,* 85 Nev. 234, 452 P.2d 918 (1969) (good cause for continuance), *limited by Sheriff v. Marcus,* 116 Nev. 188, 995 P.2d 1016 (2000). *Cf. Anderson v. State,* 109 Nev. 1150, 865 P.2d 331 (1993).

[9]*See Drummond,* 86 Nev. at 8-9, 462 P.2d at 1014-15.

[10]Category B grand larceny requires proof that the value of the property stolen was greater than $2,500. NRS 205.222(3). Category C grand larceny requires proof that the value of the property stolen was greater than $250. NRS 205.220(1); NRS 205.222(2).

[11]*See* NRS 173.095(1); *see also Parsons v. District Court,* 110 Nev. 1239, 1243-44, 885 P.2d 1316, 1320 (1994), *overruled on other grounds by Parsons v. State,* 116 Nev. 928, 10 P.3d 836 (2000).

[12]*See Benitez v. Sheriff,* 111 Nev. 1363, 1364-65, 904 P.2d 1036, 1037 (1995); *see also Huntley v. Sheriff,* 90 Nev. 187, 188-89, 522 P.2d 147, 148 (1974).

[13]*Compare State v. Hancock,* 114 Nev. 161, 167-68, 955 P.2d 183, 187 (1998).

In this case, the State raised the alternative of amending the criminal information from a category B to a category C felony in its return to Grant's petition for a pretrial writ of habeas corpus after it failed to adduce sufficient evidence of value of the property to support the original charge. Grant was on sufficient notice of the lesser charge of a category C felony. We conclude that the district court properly amended the criminal information.

Grant contends that the State improperly exercised a peremptory challenge of an African-American venireperson solely on the basis of race in violation of *Batson v. Kentucky*.[14] We conclude that Grant failed to rebut the State's race-neutral explanation for its strike and no *Batson* violation occurred.

To determine whether the State's peremptory challenge was discriminatory, a three-step inquiry is used: (1) the defendant must make a prima facie showing of discrimination; (2) the State must offer a race-neutral explanation; and (3) the defendant must rebut that explanation by showing it is pretextual.[15] We have previously stated that "[p]resumably the exclusion of three-out-of-four black prospective jurors is sufficient to make out a prima facie *Batson* violation."[16] However, " '[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.' "[17] Unless discriminatory intent is inherent in the State's race-neutral explanation, the reason will be sufficient to meet the second prong of *Batson*;[18] it need not be plausible, just not discriminatory.[19]

Grant argues that because the State struck from the venire two out of three prospective African-American jurors, he has demonstrated a prima facie showing of discrimination. However, upon our review of the jury voir dire, we conclude that the State adduced a sufficiently race-neutral reason for its strike of juror no. 579; namely, that that juror was too indecisive and "wishy-washy" and he would be unable to fairly weigh the evidence. Because these reasons alone do not raise any inference of dis-

---

[14]476 U.S. 79 (1986).

[15]*Id.* at 91-99; *see also Doyle v. State,* 112 Nev. 879, 887, 921 P.2d 901, 907 (1996).

[16]*Doyle,* 112 Nev. at 888, 921 P.2d at 907.

[17]*Id.* (quoting *Hernandez v. New York,* 500 U.S. 352, 359 (1991)).

[18]*See id.* at 888, 921 P.2d at 908.

[19]*See Purkett v. Elem,* 514 U.S. 765, 768 (1995).

criminatory intent, we conclude that the State has met its burden to rebut a *Batson* claim. Grant fails to offer any evidence that this reason is pretextual. Therefore, we conclude that no *Batson* violation occurred. Hence, we need not determine whether the pattern of striking from the venire two out of three African-Americans is a prima facie showing of discrimination.

Finally, Grant argues that the State adduced insufficient evidence of intent on both the grand larceny and possession of a controlled substance charges. We disagree. We review a claim of sufficiency of evidence by looking at the facts in the light most favorable to the State.[20] Our inquiry focuses on whether there is substantial evidence in the record to support the jury's verdict, and whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[21]

Grant argues that because grand larceny requires intent to permanently deprive the owner of the property,[22] the State failed to adduce sufficient evidence of that intent because Grant claims he intended to return the purse to security. Intent need not be proven by direct evidence but can be inferred from conduct and circumstantial evidence.[23] Because the evidence adduced at trial indicated that Grant was seen tucking the purse into his jacket several times and heading towards the lobby and exit of the Bellagio, we conclude that these circumstances provide sufficient basis from which the jury could infer the requisite intent. We therefore affirm the judgment of conviction for grand larceny.

As for the possession of a controlled substance charge, Grant's main contention is that the security officers planted the marijuana cigarettes on him, thereby negating intent. Upon our review of the record, we found no evidence supporting that contention. Officer Baker testified at trial that Grant told him the marijuana was his. We conclude that the testimony at trial indicating that Brown found the marijuana in Grant's pockets and Grant's statements to Baker admitting ownership constitute sufficient evidence to support the judgment of conviction on that count. Because Grant fails to provide any evidence aside from this contention to support his claim, we conclude that this assignment of error lacks merit.

---

[20]*Koza v. State,* 100 Nev. 245, 250, 681 P.2d 44, 47 (1984).

[21]*Id.* at 250-51, 681 P.2d at 47 (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)).

[22]*See* NRS 205.220(1); *see also* NRS 205.222(2)-(3).

[23]*See Mathis v. State,* 82 Nev. 402, 406, 419 P.2d 775, 777 (1966).

## CONCLUSION

We conclude that the district court erred in admitting Officer Brown's preliminary hearing testimony at trial because the State failed to exercise due diligence in obtaining his presence at trial. However, because we conclude that ample remaining evidence supports Grant's judgment of conviction on both counts, and his other assignments of error lack merit, we affirm the judgment of conviction.