OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 The State charged appellant Emmanuel Hernandez with first-degree murder with the use of a deadly weapon for shooting and killing Jose Gonzalez in front of the Palm Hills Apartments in Las Vegas. At the State’s request, the district court admitted at trial the preliminary hearing testimony of a witness who did not arrive to testify as scheduled. In this appeal, we address the burden placed on the proponent of an absent witness’s preliminary hearing testimony to show that reasonable diligence was used to acquire the presence of the witness.
 

 In general, before preliminary hearing testimony may be entered into evidence in a criminal trial, the proponent must demonstrate that the witness is absent despite the proponent’s reasonable efforts to procure the witness’s attendance. We conclude first that if a motion to admit preliminary hearing testimony is untimely, the proponent of the testimony must support the motion with an affidavit or sworn testimony demonstrating good cause for the untimely motion. Good cause to allow an untimely motion exists only when the proponent has exercised reasonable diligence to procure the attendance of the witness before the expiration of the motion deadline. We conclude second that in this case, although the State may have exercised reasonable diligence before the expiration of the motion deadline, it did not demonstrate that it exercised reasonable diligence to secure the presence of the witness when it became aware of her absence after the expiration of the deadline, and therefore, the district court erred when it granted the State’s motion to admit the witness’s preliminary hearing testimony.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 The State charged Hernandez with first-degree murder for shooting and killing Jose Gonzalez in front of the Palm Hills apartment complex in Las Vegas. At the jury trial, the State was unable to present the first witness it planned to call: Katrina Grijalva. The State explained that it had made arrangements for Grijalva to fly from Arizona, where she lived at the time of the trial, to Las Vegas to testify. The State sent an investigator to pick her up at the air
 
 *643
 
 port, but she never arrived. During voir dire, the State received information that Grijalva had not arrived. The State’s investigator called Grijalva’s home telephone number and a young girl who identified herself as Grijalva’s niece told the investigator that Grijalva was out of town due to a family emergency. The State immediately moved for admission of Grijalva’s preliminary hearing testimony, requesting permission to read the prior testimony into the record.
 

 Hernandez objected to the admission of the preliminary hearing testimony, arguing that the State had not sufficiently proven that Grijalva was unavailable. Hernandez argued that the State had done nothing more than call Grijalva once since she had failed to arrive in Las Vegas. He argued that because the trial was going to last at least one more day, the State had time to make further attempts to secure Grijalva’s presence. The district court concluded that the State’s reliance on Grijalva’s oral promise to appear was reasonable. Stating that it did not know what further measures the State could take or how a warrant or subpoena would help at that point, the district court granted the State’s motion to admit Grijalva’s preliminary hearing testimony.
 

 After the court’s ruling, the State presented Grijalva’s preliminary hearing testimony as the first evidence at trial. With a female district attorney playing Grijalva, the attorneys and the district court read the prior testimony into evidence. No one asked questions or made comments outside the scope of Grijalva’s prior testimony, and no one objected to any of its content. Before the attorneys read the transcript, the district court instructed the jury “to consider this as though this was the testimony because that’s what the law says.”
 

 Grijalva had testified that she worked for the Palm Hills apartment complex and was at work in the complex’s office on the day of the shooting. She lived immediately next door to the complex’s office. On the day of the shooting, she saw a black pickup truck with darkly tinted windows move around the complex’s parking lot, parking in different parking spaces from 9 a.m. until the time of the shooting, around 11 a.m. Grijalva could tell that there were two people in the car, despite the darkly tinted windows, because she could see two shadows in the car.
 

 Several times during the day, Grijalva saw Hernandez get out of the passenger’s side of the car: once to use the pay phone and twice to ask her if he could use her telephone. After the final time Hernandez used Grijalva’s telephone, Grijalva saw him return to the passenger’s side of the black pickup truck. She thought she heard the truck’s engine start, so she went to the window to see if the truck was leaving. The truck exited its parking spot, and it appeared as though it was going to leave the apartment complex, but it slowed, and before it stopped, Hernandez jumped out of the pas
 
 *644
 
 senger seat. Hernandez walked up to a white pickup truck and shot the driver, later identified as Gonzalez, at least four times through the driver’s side window. Hernandez returned to the black track, and it sped out of the complex’s parking lot.
 

 After reading Grijalva’s prior testimony into evidence, the State presented other evidence from live witnesses, including Leilani Smith, an eyewitness to the shooting, and police investigators who collected evidence of the crime. After deliberations, the jury returned a guilty verdict on the charge of first-degree murder with the use of a deadly weapon. The district court sentenced Hernandez to two consecutive life sentences with the possibility of parole after 40 years. Hernandez now appeals.
 

 DISCUSSION
 

 The district court erred by admitting Grijalva’s preliminary hearing testimony
 

 Hernandez argues that the district court erred by hearing the State’s untimely motion, unsupported by an affidavit or sworn testimony, to admit the preliminary hearing testimony of the absent witness in violation of Eighth Judicial District Court Rules (EDCR) 3.20(a)
 
 [1]
 
 and 3.28
 
 [2]
 
 and NRS 174.125.
 
 [3]
 
 He then argues that even if the State’s unsworn statements regarding the measures taken to procure Grijalva’s attendance were properly considered,
 
 *645
 
 the district court erred by failing to require the State to exercise sufficient efforts to compel Grijalva’s attendance.
 

 Testimony given during a preliminary hearing on a criminal matter may be used at trial on that matter under NRS 171.198 and NRS 51.325 “if three preconditions exist: first, that the defendant was represented by counsel at the preliminary hearing; second, that counsel cross-examined the witness; third, that the witness is shown to be actually unavailable at the time of trial.”
 
 [4]
 
 Grijalva’s unavailability is the only one of these requirements at issue in this case.
 
 [5]
 

 A witness may be unavailable if he or she is “[a]bsent from the hearing and beyond the jurisdiction of the court to compel appearance and the proponent of his [or her] statement has exercised reasonable diligence but has been unable to procure his [or her] attendance.”
 
 [6]
 
 We have interpreted the requirement that the State “exercise[ ] reasonable diligence” to mean that the State must make reasonable efforts to procure a witness’s attendance at trial before that witness may be declared unavailable.
 
 [7]
 

 In this case, we first consider whether such assignments of error should be reviewed as mixed questions of law and fact. Then, we determine whether untimely motions for the admission of preliminary hearing testimony must be supported by affidavits or sworn
 
 *646
 
 testimony demonstrating good cause and whether the State’s efforts to procure Grijalva’s attendance in this case were reasonable.
 

 Standard of review
 

 Of the several cases in which we have considered whether a district court properly admitted preliminary hearing testimony in a criminal case, none state a standard of review.
 
 [8]
 
 We generally review a district court’s decision to admit evidence for an abuse of discretion;
 
 [9]
 
 however, we review various issues regarding the admissibility of evidence that implicate constitutional rights as mixed questions of law and fact subject to de novo review.
 
 [10]
 
 We have noted that review of a district court’s decision as a mixed question of law and fact is appropriate where the determination, although based on factual conclusions, requires distinctively legal analysis.
 
 [11]
 
 Use of preliminary hearing testimony without a showing that the State made a good faith effort to procure the witness’s attendance violates a criminal defendant’s Sixth Amendment right to confront witnesses, thereby implicating his or her constitutional rights.
 
 [12]
 
 Furthermore, the determination that the State exercised reasonable diligence to procure the witness’s attendance is based on factual findings, but a distinctly legal analysis is required to determine whether the efforts satisfy constitutional standards of reasonableness.
 
 [13]
 
 Therefore, applying a mixed question of law and fact standard of review may be more appropriate.
 

 In practice, we have reviewed issues regarding the admissibility of prior testimony as mixed questions of law and fact, although we
 
 *647
 
 have not expressly adopted that standard. We have typically reviewed a district court’s factual findings, without questioning the validity of those findings, and then independently reviewed whether those facts constituted reasonable diligence in procuring a witness.
 
 [14]
 
 We now expressly adopt that standard for reviewing a district court’s determination that the prosecution exercised constitutionally reasonable diligence to procure a witness’s attendance. As a mixed question of law and fact, we will give deference to the district court’s findings of fact but will independently review whether those facts satisfy the legal standard of reasonable diligence.
 
 [15]
 

 Protecting a criminal defendant’s right to confront witnesses against him requires procedural safeguards
 

 Hernandez argues that EDCR 3.20(a) and 3.28 and NRS 174.125 required the State to make its motion for admission of the preliminary hearing testimony in writing. The State responds that those rules do not apply in this case because it did not know of the need to admit the preliminary hearing testimony until the morning of trial. Hernandez, anticipating that response, also argues that the district court erred by not requiring a written affidavit or sworn testimony to show good cause why the motion could not have been made prior to trial, following the procedure for motions to continue preliminary hearings required by
 
 Bustos
 
 v.
 
 Sheriff.
 

 [16]
 

 We agree that the procedural safeguards addressed in
 
 Bustos
 
 should apply to motions to admit preliminary hearing testimony.
 

 NRS 174.125 requires motions in the district court, which “by their nature, if granted, delay or postpone the time of trial,”
 
 [17]
 
 to be
 
 *648
 
 made at least 15 days before the scheduled trial date, unless the trial court finds good cause to hear the motion closer to trial. A party making a motion fewer than 15 days before trial must submit an affidavit to the court to establish good cause for making the untimely motion.
 
 [18]
 
 EDCR 3.28 also requires parties to make motions to admit evidence no later than the calendar call for a trial or seven days prior to trial. The rule further grants courts in that district discretion not to hear untimely motions.
 
 [19]
 
 For all motions, not just those that may delay trial or those seeking to admit or exclude evidence, EDCR 3.20(a) requires a party to support an untimely motion with an affidavit showing good cause.
 

 In
 
 Bustos,
 
 we addressed the necessity of affidavits to show good cause in the specific circumstance of a prosecutor seeking a continuance of a preliminary hearing due to the unavailability of witnesses.
 
 [20]
 
 We had previously required a prosecutor who moved for such a continuance to submit an affidavit stating:
 

 (a) the names of the absent witnesses and their present residences, if known; (b) the diligence used to procure their attendance; (c) a brief summary of the expected testimony of such witnesses and whether the same facts can be proven by other witnesses; (d) when the affiant first learned that the attendance of such witnesses could not be obtained; and (e) that the motion is made in good faith and not for delay.
 
 [21]
 

 We modified that rule in
 
 Bustos
 
 by allowing the State to present sworn testimony concerning the above requirements because we recognized that situations might arise preventing the State from submitting an affidavit.
 
 [22]
 
 In
 
 Jasper v. Sheriff,
 
 we extended
 
 Bustos
 
 by allowing the State to supplement an otherwise deficient affidavit with oral testimony but expressly required such testimony to be under oath.
 
 [23]
 

 Whether there is good cause to make an untimely motion for admission of preliminary hearing testimony requires the district court to make a factual finding that the State exercised reasonable diligence before NRS 174.125’s pretrial motion deadline.
 
 [24]
 
 The procedural safeguards addressed in
 
 Bustos
 
 apply equally to this situation and require that such a motion be supported by an affidavit. Therefore, to establish good cause for making an untimely motion
 
 *649
 
 to admit preliminary hearing testimony, the State must provide an affidavit or sworn testimony regarding its efforts to procure the witness prior to the pretrial motion deadline.
 
 [25]
 

 In this case, the district court did not require the State to establish good cause for failing to file the motion before trial by affidavit or sworn testimony. In fact, the State moved for admission of the preliminary hearing testimony and the district court made its initial decision to grant the motion off the record. Before making a record of its decision, the district court allowed the State, in its opening statement, to inform the jury of Grijalva’s unavailability and that it would hear her prior testimony.
 

 After opening statements, at the time the district court made a record of its decision, the State told the district court that it was unaware of Grijalva’s unavailability until it received a note during voir dire. The State further described the circumstances, but it is clear from the record that it had no personal knowledge of the facts it presented.
 
 [26]
 
 The State told the district court that its investigator had been in contact with Grijalva; the State had made flight arrangements for her to travel to Las Vegas from her home in Arizona; and when its investigator went to pick up Grijalva at the airport, she was not there. The State’s investigator called Grijalva’s house and was told by a young girl that Grijalva had left Arizona due to a family emergency.
 

 On appeal, the State concedes that the district court did not require any sworn testimony to support its motion to admit Grijalva’s preliminary hearing testimony and does not argue that procedural rules from
 
 Bustos
 
 should not apply to untimely motions to admit prior testimony at trial. The State argues, however, that this court designed the protections in
 
 Bustos
 
 to prevent the State from abusing the judicial process, and because there was no evidence of abuse in this case, the judgment of conviction should not be reversed.
 

 In
 
 Bustos,
 
 we discussed the need for procedural safeguards where “there was a willful failure of the prosecution to comply
 
 *650
 
 with important procedural rules, and where the prosecutor had exhibited a conscious indifference to rules of procedure affecting the defendant’s rights.”
 
 [27]
 
 We determined that the prosecutor should have been required to orally testify under oath concerning good cause to seek the continuance. But because the record did not reveal abuse of the procedural rules, and the prosecutor could have shown good cause, we held that the granting of a continuance was not reversible error.
 
 [28]
 
 As in
 
 Bustos,
 
 we will not here fault the district court for failing to comply with a prophylactic rule “not heretofore . . . suggested”;
 
 [29]
 
 however, it is not clear from the record in this case that the State could have demonstrated good cause. Because the State only had good cause to make an untimely motion to admit preliminary hearing testimony if it exercised reasonable diligence to secure Grijalva’s attendance at trial, we next address the reasonableness of the State’s actions.
 

 The district court erred by admitting the preliminary hearing transcript without requiring the State to make further efforts to compel Grijalva’s attendance
 

 Hernandez asserts that the State’s actions were unreasonable for two reasons: because the State did not subpoena Grijalva or attempt to use the Uniform Act To Secure the Attendance of Witnesses From Without a State in Criminal Proceedings
 
 [30]
 
 (Uniform Act) to compel Grijalva’s attendance before trial, and because it did not make further attempts to procure Grijalva’s attendance after her failure to arrive on the morning of the trial. His contentions require an examination of two separate time periods to determine whether the State’s actions were reasonable: first, in its initial efforts to procure Grijalva’s attendance and, second, in its efforts after she failed to appear on the morning of trial.
 
 [31]
 
 As to both time periods, the State maintains that it did all it could to procure Grijalva’s attendance.
 

 What constitutes reasonable efforts to procure a witness’s attendance must be determined upon considering the totality of the cir
 
 *651
 
 cumstances.
 
 [32]
 
 In the analogous circumstance of determining whether a prosecutor has good cause for continuing a preliminary hearing due to the absence of witnesses, this court rejected a bright-line rule requiring a service of a subpoena on an out-of-state witness, noting “[t]here may be circumstances where a prosecutor can demonstrate ‘good cause’ for a continuance based upon an absent witness even though it did not subpoena the witness. Conversely, there may be circumstances where a prosecutor has subpoenaed witnesses, yet cannot demonstrate ‘good cause’ for their absence.”
 
 [33]
 
 In determining whether the proponent of preliminary hearing testimony has met its burden of proving that a witness is constitutionally unavailable, the touchstone of the analysis is the reasonableness of the efforts.
 
 [34]
 

 The United States Supreme Court, in discussing the reasonableness of a prosecutor’s actions, noted:
 

 The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witnesses] intervening death), “good faith” demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation.
 
 [35]
 

 This court also has stated that a prosecutor’s efforts were reasonable where “it [was] unlikely that the additional efforts suggested by [the defendant] would have led to the witnesses’ production at trial.”
 
 [36]
 
 Where only minimal efforts are made to procure a witness’s attendance, and those minimal efforts are unreasonable, it is error to admit preliminary hearing testimony.
 
 [37]
 

 Looking to the facts of this case, we must determine whether the State used reasonable efforts before trial to procure Grijalva’s at
 
 *652
 
 tendance and whether it used reasonable efforts after she failed to arrive as scheduled. Regarding diligence pretrial, the State has offered no evidence that Grijalva was subpoenaed.
 
 [38]
 
 The State knew Grijalva’s out-of-state residence, had her phone number, and could have served her with a subpoena or used the Uniform Act to compel her attendance. However, any action to compel her attendance in that instance may not have been more successful than obtaining her oral promise and making travel arrangements for her because the alleged reason she failed to arrive in Las Vegas was a family emergency. Family emergencies may often create situations in which witnesses do not comply with orders to appear. We conclude that the State’s pretrial actions were reasonable.
 

 The State’s actions after Grijalva failed to appear, however, were not reasonable. The State offered no evidence regarding its attempts to obtain Grijalva’s attendance after her failure to appear. Instead, the State explained that it attempted to call Grijalva once and spoke to a young girl who stated that there had been an unspecified family emergency. These minimal efforts do not justify the district court’s conclusion that no other means existed to procure Grijalva’s attendance. The State failed to communicate with an adult in Grijalva’s household, provided no information that an actual family emergency existed, and failed to advise the district court concerning the length of Grijalva’s absence or when she would return. We also note that the State failed to seek a continuance of the trial to obtain any of this information or secure Grijalva’s attendance. Although this court has held that the State need not exercise all options that appear reasonable in hindsight,
 
 [39]
 
 in this case, the district court’s conclusion that there was no possibility of obtaining Grijalva’s attendance cannot be supported by a single call to a young girl representing herself as Grijalva’s niece. Therefore, the district court erred when it granted the State’s motion and admitted Grijalva’s preliminary hearing testimony.
 

 The error was not harmless beyond a reasonable doubt
 

 We review a district court’s decision to admit prior testimony for harmless error.
 
 [40]
 
 In considering whether a Confrontation Clause vi
 
 *653
 
 olation is harmless, this court looks to “ ‘the importance of the witnesses] testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecutor’s case.’ ”
 
 [41]
 
 After considering those factors, if this court can determine, beyond a reasonable doubt, that the erroneous admission of the prior testimony did not contribute to the defendant’s conviction, then the error was harmless.
 
 [42]
 

 In this case, the State argues that any error in admitting Grijalva’s testimony was harmless because other evidence and witness testimony support Hernandez’s conviction. The State specifically argues that Smith, the other eyewitness to the shooting, testified regarding the circumstances of the shooting and identified Hernandez as the shooter. The State argues that Hernandez’s fingerprints on the pay phone also established that he was present at the scene of the shooting.
 

 Grijalva’s testimony, however, established Hernandez’s presence at the scene before the shooting. The State argued in closing that “the most important instruction with regard to the first-degree murder” was the instruction regarding lying in wait. It then used information derived solely from Grijalva’s testimony to establish that Hernandez waited for Gonzalez. Grijalva’s testimony was corroborative of Smith’s testimony but it was not entirely duplicative. No other testifying witness spoke to or personally interacted with Hernandez on the day of the shooting. Therefore, Grijalva’s identification of Hernandez was more reliable and not merely duplicative of Smith’s. We cannot conclude, beyond a reasonable doubt, that Grijalva’s testimony did not contribute to Hernandez’s conviction. Therefore, the admission of the prior testimony was not harmless error. Accordingly, we reverse the judgment of conviction and remand this case for a new trial.
 
 [43]
 

 CONCLUSION
 

 In this case, the district court erred by granting the State’s motion to admit the preliminary hearing testimony of an absent wit
 
 *654
 
 ness because it failed to require an affidavit or sworn testimony from the prosecutor to determine whether good cause existed to make an untimely motion for the admission of preliminary hearing testimony and concluded that a single telephone call after the witness failed to appear as scheduled was a reasonable exercise of diligence to procure a witness’s attendance. Because that error was not harmless, we reverse the district court’s judgment of conviction and remand this case for a new trial.
 

 Parraguirre and Douglas, JJ., concur.
 

 [1]
 

 EDCR 3.20(a) provides:
 

 Unless otherwise provided by law or by these rules, all motions must be served and filed not less than 15 days before the date set for trial. The court wiE only consider late motions based upon an affidavit demonstrating good cause and it may decline to consider any motion filed in violation of this rule.
 

 [2]
 

 EDCR 3.28 provides:
 

 All motions in limine to exclude or admit evidence must be in writing and noticed for hearing not later than calendar call, or if no calendar call was set by the court, no later than 7 days before trial. The court may refuse to consider any oral motion in limine and any motion in limine which was not timely filed.
 

 [3]
 

 NRS 174.125 provides:
 

 1. All motions in a criminal prosecution to suppress evidence, for a transcript of former proceedings, for a preliminary hearing, for severance of joint defendants, for withdrawal of counsel, and all other motions which by their nature, if granted, delay or postpone the time of trial must be made before trial, unless an opportunity to make such a motion before trial did not exist or the moving party was not aware of the grounds for the motion before trial.
 

 3. In any judicial district in which two or more judges are provided:
 

 (a) All motions subject to the provisions of subsection 1 must be made in writing not less than 15 days before the date set for trial, except that if less than 15 days intervene between entry of a plea and the date set for trial, such a motion may be made within 5 days after entry of the plea.
 

 
 *645
 
 (b) The court may, if a defendant waives hearing on the motion or for other good cause shown, permit the motion to be made at a later date.
 

 4. Grounds for making such a motion after the time provided or at the trial must be shown by affidavit.
 

 [4]
 

 Drummond
 
 v.
 
 State,
 
 86 Nev. 4, 7, 462 P.2d 1012, 1014 (1970).
 

 [5]
 

 Hernandez concedes that he was represented by counsel at the preliminary hearing and that counsel cross-examined Grijalva at the preliminary hearing.
 

 [6]
 

 NRS 51.055(1)(d).
 
 See Funches v. State,
 
 113 Nev. 916, 922-23, 944 P.2d 775, 779 (1997) (rejecting a strict construction of NRS 171.198’s list of conditions that create unavailability and expanding the definition to include NRS 51.055 and other general provisions of the evidence code when determining a witness’s unavailability). We note that the district court properly rejected the State’s argument that Grijalva was unavailable simply because she was out of state. Although NRS 171.198(6)(b) lists a witness being “out of the State” as a reason he or she may be unavailable, to protect a defendant’s Sixth Amendment right to confront witnesses against him, the State must nonetheless prove that it exercised reasonable efforts to procure the witness’s attendance.
 
 See Barber
 
 v.
 
 Page,
 
 390 U.S. 719, 724-25 (1968) (“[A] witness is not ‘unavailable’ . . . unless the prosecutorial authorities have made a good-faith effort to obtain his [or her] presence at trial.”);
 
 accord Drummond,
 
 86 Nev. at 7, 462 P.2d at 1014.
 

 [7]
 

 Power
 
 v.
 
 State,
 
 102 Nev. 381, 383-84, 724 P.2d 211, 212-13 (1986) (citing
 
 Ohio
 
 v.
 
 Roberts,
 
 448 U.S. 56, 74-75 (1980),
 
 abrogated on other grounds by Crawford v. Washington,
 
 541 U.S. 36, 60 (2004)).
 

 [8]
 

 But see Quillen v. State,
 
 112 Nev. 1369, 1376, 929 P.2d 893, 898 (1996) (stating that the district court’s decision was “not clearly erroneous” without articulating a standard of review).
 

 [9]
 

 See,
 
 e.g., Mclellan
 
 v.
 
 State,
 
 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (“We review a district court’s decision to admit or exclude evidence for an abuse of discretion.”).
 

 [10]
 

 See, e.g., Rosky
 
 v.
 
 State,
 
 121 Nev. 184, 190-91, 111 P.3d 690, 694 (2005) (adopting the mixed question of law and fact standard for reviewing a district court’s decision regarding the admissibility of a criminal defendant’s statement offered by the State);
 
 Johnson v. State,
 
 118 Nev. 787, 794, 59 P.3d 450, 455 (2002) (“Suppression issues present mixed questions of law and fact.”).
 

 [11]
 

 Rosky, 121 Nev. at 190, 111 P.3d at 694.
 

 [12]
 

 U.S.
 
 v.
 
 Yida,
 
 498 F.3d 945, 950 (9th Cir. 2007) (“The constitutional requirement that a witness be ‘unavailable’ before his prior testimony is admissible stands on separate footing that is independent of and in addition to the requirement of a prior opportunity for cross-examination.”) (citing
 
 Barber v. Page,
 
 390 U.S. 719, 724-25 (1968));
 
 see also
 
 U.S. Const. amend. VI.
 

 [13]
 

 See, e.g., Ohio v. Roberts,
 
 448 U.S. 56, 74-77 (1980),
 
 abrogated on other grounds by Crawford v. Washington,
 
 541 U.S. 36, 60 (2004).
 

 [14]
 

 See, e.g., Grant v. State,
 
 117 Nev. 427, 432-33, 24 P.3d 761, 765 (2001) (listing the actions taken by the State to attempt to procure the witness and concluding that those actions were not diligent);
 
 Drummond v. State,
 
 86 Nev. 4, 7-8, 462 P.2d 1012, 1014 (1970) (examining the facts of recent United States Supreme Court cases and the standards for reasonableness in those cases, then comparing that standard to the facts as determined by the district court in the case on appeal).
 

 [15]
 

 See Rosky,
 
 121 Nev. at 190, 111 P.3d at 694 (“The district court’s purely historical factual findings pertaining to the ‘scene- and action-setting’ circumstances surrounding an interrogation is entitled to deference and will be reviewed for clear error. However, the district court’s ultimate determination of whether a person was in custody and whether a statement was voluntary will be reviewed de novo.”).
 

 [16]
 

 87 Nev. 622, 491 P.2d 1279 (1971). Although Hernandez opposed the State’s oral motion to admit Grijalva’s testimony, he did not oppose it on this specific procedural ground at the trial court. Because in
 
 Grant,
 
 117 Nev. at 431-33, 24 P.3d at 764-65, we linked the procedural requirements of NRS 174.125 to the constitutional requirement that the State prove it had exercised reasonable diligence to procure a witness’s attendance, we determine that Hernandez preserved this assignment of error by objecting to the admission of Grijalva’s preliminary hearing testimony without a showing by the State that it had exercised reasonable diligence.
 

 [17]
 

 NRS 174.125(1).
 

 [18]
 

 NRS 174.125(4).
 

 [19]
 

 EDCR 3.28.
 

 [20]
 

 87 Nev. at 624, 491 P.2d at 1280-81.
 

 [21]
 

 Hill v. Sheriff,
 
 85 Nev. 234, 235-36, 452 P.2d 918, 919 (1969).
 

 [22]
 

 87 Nev. at 624, 491 P.2d at 1280-81.
 

 [23]
 

 88 Nev. 16, 19, 492 P.2d 1305, 1306 (1972).
 

 [24]
 

 Grant v. State,
 
 117 Nev. 427, 432, 24 P.3d 761, 764 (2001).
 

 [25]
 

 We note that imposing this procedural requirement that the State support its motion with an affidavit or sworn testimony also serves the purpose of ensuring an adequate record for appellate review of the reasonableness of the State’s actions. When a decision is subject to review as a mixed question of law and fact, the district court must make specific factual findings to enable adequate appellate review.
 
 See State v. Ruscetta,
 
 123 Nev. 299, 304, 163 P.3d 451, 455 (2007);
 
 State
 
 v.
 
 Rincon,
 
 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006);
 
 Rosky v. State,
 
 121 Nev. 184, 191, 111 P.3d 690, 695 (2005).
 

 [26]
 

 Hernandez argues that the district court should not have allowed the State to support its motion with hearsay and other inadmissible evidence. We do not specifically address Hernandez’s argument based on the admissibility of the State’s evidence because we conclude that the district court should have required an affidavit or sworn testimony. District courts should require admissi
 
 *650
 
 ble evidence in an affidavit or sworn testimony to show good cause for an untimely motion. Questioning the person responsible for contacting the witness is a valuable tool for uncovering the reasonableness of those actions.
 
 See, e.g., Quillen v. State,
 
 112 Nev. 1369, 1375, 929 P.2d 893, 897 (1996) (discussing the State investigator’s testimony during cross-examination).
 

 [27]
 

 87 Nev. at 623, 491 P.2d at 1280 (citations omitted).
 

 [28]
 

 Id.
 
 at 623-24, 491 P.2d at 1280-81.
 

 [29]
 

 Id.
 
 at 624, 491 P.2d at 1281.
 

 [30]
 

 See
 
 NRS 174.395-.445.
 

 [31]
 

 See U.S. v. Yida,
 
 498 F.3d 945, 949 (9th Cir. 2007) (considering the reasonableness of the government’s actions both substantially before trial, when
 
 *651
 
 it decided to allow the deportation of a key witness held under a material witness warrant, and the reasonableness of the government’s attempts to compel the witness to return);
 
 Drummond v. State,
 
 86 Nev. 4, 5-6, 462 P.2d 1012, 1013 (1970) (considering the State’s contacts with the witness in question before trial and after the witness failed to appear as promised).
 

 [32]
 

 See Sheriff v. Terpstra,
 
 111 Nev. 860, 863, 899 P.2d 548, 550 (1995) (holding that a court must consider the totality of the circumstances to determine whether a prosecutor has demonstrated good cause to continue a preliminary hearing due to the absence of a witness).
 

 [33]
 

 Id.
 

 [34]
 

 Ohio
 
 v.
 
 Roberts,
 
 448 U.S. 56, 74 (1980),
 
 abrogated on other grounds by Crawford v. Washington,
 
 541 U.S. 36, 60 (2004).
 

 [35]
 

 Id.
 
 (emphasis omitted).
 

 [36]
 

 Quillen
 
 v.
 
 State,
 
 112 Nev. 1369, 1376, 929 P.2d 893, 898 (1996).
 

 [37]
 

 Power
 
 v.
 
 State,
 
 102 Nev. 381, 384, 724 P.2d 211, 213 (1986).
 

 [38]
 

 During oral argument before this court, the State asserted that an oral promise to appear is the legal equivalent of a subpoena under NRS 174.315(3). Although NRS 174.315(3) allows a witness to accept delivery of a subpoena in lieu of service by making an oral promise to appear, it requires the person accepting that promise to follow certain procedures before it is given effect. An oral promise to appear without a certificate of service executed by the person who accepted the promise is not the legal equivalent of a served subpoena.
 

 [39]
 

 Quillen, 112 Nev. at 1376, 929 P.2d at 898.
 

 [40]
 

 Drummond
 
 v.
 
 State,
 
 86 Nev. 4, 8-9, 462 P.2d 1012, 1015 (1970);
 
 accord Delaware v. Van Arsdall,
 
 475 U.S. 673, 684 (1986).
 

 [41]
 

 Power,
 
 102 Nev. at 384, 724 P.2d at 213 (omission in original) (quoting
 
 Van Arsdall,
 
 475 U.S. at 684).
 

 [42]
 

 See Chapman v. California,
 
 386 U.S. 18, 25-26 (1967) (“|T]t is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor’s comments and the trial judge’s instruction did not contribute to petitioners’ convictions.”).
 

 [43]
 

 Given our conclusion that the district court’s error in admitting the preliminary hearing testimony requires a new trial in this case, we decline to address Hernandez’s other arguments on appeal, except to note that there was clearly sufficient evidence to support Hernandez’s conviction.
 
 See Origel-Candido v. State,
 
 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998);
 
 Jackson v. Virginia,
 
 443 U.S. 307 (1979).