# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
ERIC COVINGTON,
Respondent.

No. 71914

**FILED**

JAN 2 2 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S.Young_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order declaring respondent Eric Covington intellectually disabled and striking the State's notice of intent to seek the death penalty. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

The State accused Covington of murdering Sagittarius Gomez and sought the death penalty. It alleged that Covington stabbed Gomez, who was pregnant with his child, over one hundred times and then took her property. On the sixth day of trial, Covington moved to strike the notice of intent to seek the death penalty on the ground that he is intellectually disabled. After suspending the proceedings and conducting an evidentiary hearing, the district court granted the motion. The State appeals, arguing that the district court should not have entertained the motion and that its findings are not supported by substantial evidence. We conclude that these arguments lack merit and therefore affirm the district court's order.

*The district court did not err in entertaining the motion*

The State argues that the district court should not have considered the motion because it was untimely. It asserts that the district court impermissibly enlarged the statutory time frame. We conclude that the district court did not err in considering the motion. *See Hernandez v. State*, 124 Nev. 639, 646-47, 188 P.3d 1126, 1131-32 (2008) (noting that this court reviews a district court's findings regarding good cause to file an

untimely motion as a mixed question of law and fact and will give deference to the court's findings of fact).

The relevant statutes contemplate a motion being filed at least 10 days before trial or after a death sentence has been imposed. *See* NRS 174.098(1) (providing that a motion to strike the death penalty on the basis that a defendant is intellectually disabled may be filed "not less than 10 days before the date set for trial"); NRS 175.554(5) (permitting a post verdict motion to set aside the death penalty on the basis that the defendant is intellectually disabled if no prior determination has been made). However, these provisions are not exclusive. As a general rule, a pretrial motion that may delay or postpone trial can be filed late if it is based on facts that were not known at the time for timely filing the motion. NRS 174.125(1); *see* NRS 174.098(2) (requiring district court to stay proceedings and hold an evidentiary hearing when defendant asserts intellectual disability to strike death penalty).

The record supports a conclusion that the defense was not aware of the grounds for the motion before trial, which justifies the filing of a late motion. *See* NRS 174.125(4) (requiring party filing late motion to submit affidavit setting forth grounds for untimely motion). Counsel retained several experts to evaluate potential mitigating evidence. Three years before trial, Dr. Thomas Kinsora found that Covington had a full-scale IQ of 77, and even when accounting for the standard error of measurement, did not have significantly subaverage intellectual functioning. Thus, it was not unreasonable for counsel to not pursue the issue further at that time. Dr. Mark Cunningham was retained to assist in preparing mitigation evidence after another expert could not complete the necessary work due to illness. Dr. Cunningham had identified "deficient intelligence" in his pretrial sentencing evaluation, but he did not have enough information to

 

discern whether Covington was intellectually disabled. Testing conducted during trial revealed that Covington had an IQ of 62 (range 59-67). Dr. Cunningham also interviewed Covington's mother and stepfather and concluded that Covington had significantly subaverage deficits in adaptive behavior that existed since childhood. Although Dr. Cunningham interviewed Covington in 2015, he did not conduct a formal intellectual disability evaluation until the trial had begun. Dr. Cunningham noted that the prior score of 77, when adjusted in accordance with the Flynn effect,[1] fell to 75, which could evidence significantly subaverage intellectual functioning. Considering how counsel came to discover that Covington might be intellectually disabled, the district court did not err in considering the untimely motion.

*The district court did not err in concluding that Covington was intellectually disabled*

The State argues that Covington failed to meet his burden of demonstrating that he was intellectually disabled.[2] Specifically, the State contends that Covington failed to demonstrate significant subaverage adaptive deficits or that those adaptive deficits manifested in the developmental period.

---

[1]The Flynn effect refers to the gradual increase in scores on an intelligence test over time and the need to adjust a given score relative to the last time that the test was re-normed. *See Ybarra v. State*, 127 Nev. 47, 62, 247 P.3d 269, 279 (2011).

[2]The State also contends that the district court improperly began drafting its findings of fact and conclusions of law before the end of the evidentiary hearing. Late in the evidentiary hearing, the district court indicated that it was drafting its findings of fact and conclusion of law. We conclude that the record does not indicate that the court had closed its mind to further evidence and argument, but instead showed the district court's concern to ensure a swift disposition of this matter.

NRS 174.098(7) defines "intellectual disability" as "significant subaverage general intellectual functioning which exists concurrently with deficits in adaptive behavior." NRS 174.098(7). Both the cognitive and adaptive deficits must manifest before the defendant is 18 years old. *Id.*; *see Ybarra v. State*, 127 Nev. 47, 56-57, 247 P.3d 269, 275-76 (2011). The defendant bears the burden of proving by a preponderance of the evidence that he is intellectually disabled. NRS 174.098(5)(b).

Here, the State challenges the district court's determination that Covington has deficits in adaptive behavior and that his deficits in intellectual functioning and adaptive behavior manifested before he turned 18 years of age.[3] We give deference to the district court's factual findings but review its legal conclusions de novo. *See Ybarra*, 127 Nev. at 58, 247 P.3d at 276.

The district court concluded that Covington proved he suffered from significant deficits in adaptive behavior. Specifically, Covington's adaptive functioning, as described by Dr. Cunningham, reflected deficits more severe than those observed in *Ybarra*. It concluded that these deficits existed concurrently with his intellectual functioning deficits and manifested before he was 18 years old. Pointing to a number of adaptive strengths reported by the expert witnesses, the State argues that Covington failed to meet his burden of proving significant adaptive behavior deficits. We disagree.

"'Adaptive behavior' has been defined as the 'collection of conceptual, social, and practical skills that have been learned by people in

---

[3]Because the State has not challenged the district court's determination that Covington demonstrated significant subaverage intellectual functioning, we do not address that component of the intellectual-disability definition.

SUPREME COURT
OF
NEVADA

(O) 1947A

order to function in their everyday lives,' and thus, 'limitations on adaptive behavior are reflected by difficulties adjusting to ordinary demands made in daily life.'" *Ybarra*, 127 Nev. at 55, 247 P.3d at 274 (quoting *Commonwealth v. Miller*, 888 A.2d 624, 630 (Pa. 2005)). Deficits in only one of the three adaptive-skills areas suffice to show adaptive deficits for purposes of intellectual disability. *Moore v. Texas*, 137 S. Ct. 1039, 1050 (2017) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 5, 33, 38 (5th ed. 2013) [DSM-5]). "

We conclude that the district court's findings regarding Covington's adaptive deficits are supported by substantial evidence. Dr. Cunningham and the State's expert, Dr. Martha Mahaffey, agreed that Covington had significant adaptive deficits. While Dr. Cunningham attributed these deficits to intellectual disability, Dr. Mahaffey insisted that they could have resulted from gaps in instruction, antisocial personality traits, or chronic substance abuse. Dr. Mahaffey's conclusion is infirm because it does not recognize that people with intellectual disability often have comorbid psychological disorders and such a disorder should not be considered evidence that a defendant does not have an intellectual disability, nor is a defendant required to show that his adaptive deficits are specifically caused by an intellectual disability. *See Moore*, 137 S. Ct. at 1051 ("[M]any intellectually disabled people also have other mental or physical impairments . . . . The existence of a personality disorder or mental-health issue, in short, is 'not evidence that a person does not also have intellectual disability.'" (citations omitted));*see also United States v. Wilson*, 170 F. Supp. 3d 347, 370 (E.D.N.Y. 2016). Dr. Cunningham's conclusions were more compelling. He had been published extensively in peer reviewed journals on the subject of intellectual disability and the death penalty. He had also completed a full evaluation of Covington and

interviewed Covington, members of his family, and the mother of his children. Conversely, Dr. Mahaffey did not perform her own independent evaluation.

The State's arguments also improperly rely on Covington's adaptive strengths to compensate for any asserted deficits. As reiterated by the Supreme Court, the focus is on adaptive deficits rather than any perceived adaptive strengths. *Moore*, 137 S. Ct. at 1050 (citing AAIDD 2010 Manual 47); *accord Jackson v. Kelley*, 898 F.3d 859, 865 (8th Cir. 2018) (concluding that trial court erred in relying on perceived adaptive strengths to find defendant was not intellectually disabled). Family members acknowledged that Covington had generally lower comprehension than his siblings or peers; was oblivious to the consequences of his actions; was unable to follow movie plots, literature, or conversations; and was gullible, lacked insight into others' emotions, and generally did not engage in the typical behaviors of an independent adult, including consistent employment, budgeting, and parental problem solving.

Finally, the State argues that the district court erred because Covington did not present sufficient evidence that his intellectual and adaptive deficits manifested before he turned 18. It asserts that Covington had not been tested before he turned 18, family members who reported deficits during the developmental period had a vested interest in the outcome of the proceeding, and school records did not indicate severe deficits.

We conclude that sufficient evidence was presented to show that Covington's intellectual and adaptive deficits manifested during the developmental period. Dr. Cunningham concluded that Covington showed significant subaverage intellectual functioning and adaptive deficits before the age of 18. While Covington was not placed in special education classes

or subjected to intelligence testing, he routinely scored low throughout his education. Although he sometimes earned higher marks, this alone is not a conclusive indication that Covington did not have significant subaverage intellectual functioning because a child with an intellectual disability may still perform marginally adequate in the early elementary school years. Denis W. Keyes & David Freedman, Retrospective Diagnosis and Malingering in *The Death Penalty and Intellectual Disability* 265-66 (Edward A. Polloway, ed. 2015). Additionally, multiple family members concurred in their reports to Dr. Cunningham that Covington's adaptive deficits were present as a child and throughout his adolescence. While the evidence indicated two possible post-developmental neurological insults that could have caused his deficits, Covington's deficits preceded those events.

Having considered the State's contentions and concluding that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

cc:    Hon. Elizabeth Goff Gonzalez, District Judge
       Attorney General/Carson City
       Clark County District Attorney
       Law Office of Lisa Rasmussen
       Pitaro & Fumo, Chtd.
       Eighth District Court Clerk

