# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| COLE DUANE ENGELSON,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 82691<br><br>**FILED**<br><br>MAR 18 2022 |

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder. Fifth Judicial District Court, Nye County; Robert W. Lane, Judge.

Appellant Cole Engelson was taking care of his girlfriend's three-year-old daughter, Yessenia Camp, when she was killed. Yessenia's mother, Victoria, had left Yessenia alone with Engelson at the time of the murder and, although Engelson asserted he did not remember how Yessenia died, he stated multiple times to detectives that he was responsible for Yessenia's death, including that the cause of her death was "literally" at his hands. A jury convicted Engelson of first-degree murder and he was sentenced to life in prison without parole.

On appeal, Engelson advances multiple arguments in support of a new trial, including that the district court improperly admitted evidence of two prior bad acts, denied a motion to suppress statements he made to detectives, and admitted a witness's deposition transcript. For the reasons set forth below, we affirm the judgment of conviction.[1]

---

[1]We have reviewed the record and the additional arguments on appeal and we conclude (1) that the district court did not err by denying Engelson's motion to disqualify the Nye County District Attorney's Office where the evidence does not support that Engelson's prior attorney was not properly

We first address the prior bad acts evidence. The district court allowed the State to introduce evidence that, three months before the murder, Yessenia fell and cut her chin while Engelson was babysitting her and that Engelson immediately notified Victoria of that injury. The district court also admitted a statement Engelson made to Victoria, about a month prior to the murder, that he had spanked Yessenia too hard.

We review for an abuse of discretion the district court's decision to admit prior bad act evidence and we will not reverse absent an abuse of discretion. *Randolph v. State*, 136 Nev. 659, 661, 477 P.3d 342, 346 (2020). A threshold requirement for admission is that the evidence must be relevant. NRS 48.025(1). NRS 48.045(2) provides that evidence of prior bad acts "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith" although it may be admissible for other purposes, including to show absence of mistake or accident. However, the probative value must not be substantially outweighed by the prejudicial effect. *See Randolph*, 136 Nev. at 661, 477 P.3d at 346. We assess unfair prejudice by looking at the need for the evidence, the basis for its admission, "the use to which the evidence was actually put," and whether the evidence will "rouse the jury to

---

screened off the case or that any prejudice was fairly imputed to the entire office; (2) Yessenia's autopsy photographs were properly admitted to help explain the expert's testimony; and (3) Engelson's sentence fell within the statutory limits and was appropriate for the crime. To the extent there was any error regarding mention of Engelson's "jail calls," the error was harmless considering the overwhelming evidence against Engelson presented at trial, as addressed below. *See* NRS 178.598. Finally, even assuming, *arguendo*, any non-victim gave improper victim-impact statements at sentencing, any error was harmless because the non-victims and the victims asked for the same sentence. *See id.*

overmastering hostility." *Id.* at 665, 477 P.3d at 349 (internal quotation marks omitted).

The prior bad act evidence here was inadmissible. The State sought to introduce evidence of the chin injury to contrast it with the murder and to argue that Engelson's failure to immediately alert Victoria of Yessenia's injuries on the day she died suggested that the killing, unlike the earlier chin injury, was not an accident. The district court admitted evidence of the cut to Yessenia's chin to prove absence of mistake. But evidence concerning the chin injury has little, if any, relevance here. Engelson argued he did not remember what happened to Yessenia, and so contrasting the two incidents proves little about the nature of the killing. Moreover, an accidental chin cut three months before the murder bears no similarity to the extensive, traumatic, and deadly injuries Yessenia sustained on the day she was killed. The evidence also lacked probative value considering the fact that Engelson confessed to killing Yessenia and the circumstantial evidence adduced at trial supported the conclusion that the killing was not accidental. Finally, the prejudice accompanying this evidence was high, where the jury could view it as a possible earlier incident of child abuse.

Similarly, Victoria's testimony that sometime prior to the killing Engelson said he had spanked Yessenia "too hard, that he had popped her a good one," should not have been admitted. The State argued the testimony shows Engelson knew to not hit Yessenia too hard and the evidence therefore went to Engelson's mens rea. The district court likewise admitted this evidence to prove absence of mistake, but the evidence has no relevance. Again, because Engelson's defense was that he did not know what happened to Yessenia, showing that he knew what constituted hitting

"too hard" does little to counter his defense, and, moreover, spanking a child "too hard" is distinct from beating a child to death, as the State argued happened here. Further, the prejudice outweighs any probative value, as the jury could improperly infer from this evidence a propensity to hit Yessenia and a pattern of child abuse. And, again, this evidence was unnecessary in light of the evidence adduced at trial. Therefore, the district court erred by admitting the prior bad act evidence.

We nevertheless conclude the error was harmless here. *See* NRS 178.598 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); *Hubbard v. State*, 134 Nev. 450, 459, 422 P.3d 1260, 1267 (2018) (explaining an error that does "not have a substantial and injurious effect or influence in determining the jury's verdict" will not warrant reversal). Engelson was the only person present with Yessenia at the time of the murder, he confessed to killing Yessenia—indicating he caused her death "literally" with his hands—and Engelson had marks on his knuckles that were consistent with hitting a person. Yessenia had abrasions and contusions over her entire head and body, and the autopsy showed that Yessenia had been injured so severely her internal organs were damaged, including her brain and eyes, and she had sustained blunt force trauma similar to the trauma caused by a car accident. The doctor who performed the autopsy concluded the manner of death was homicide. As to the spanking evidence in particular, Engelson also told detectives that he had previously spanked Yessenia and that he was "heavy-handed." Moreover, although Engelson claimed he could not recall what happened to cause Yessenia's death, he was able to provide details regarding events that occurred the day before and after she died, undermining the veracity of his defense. Given the overwhelming evidence

against Engelson, the admission of the prior bad act evidence does not warrant reversal.[2]

Next, we address the district court's denial of Engelson's motion to suppress the statements he made to the detectives. Engelson talked to Detective Fernandes when she arrived at the scene, and he later confessed to her. Detective Fernandes did not read him his *Miranda* rights when she first made contact with him, but she read him his *Miranda* rights after he confessed.

We conclude Engelson was not in custody when Detective Fernandes initially questioned him and that when Detective Fernandes first arrived on the scene, she was investigating the crime and gathering facts about the crime. *State v. Taylor*, 114 Nev. 1071, 1082-83, 968 P.2d 315, 323-24 (1998) (deciding an individual is generally not in custody for *Miranda* purposes when he is questioned during the fact-finding process and concluding the defendant was not in custody where officers did not move or restrain him, did not handcuff or draw their guns on defendant, and did not accuse defendant of anything or inform him he was not free to leave); *Belcher v. State*, 136 Nev. 261, 264, 464 P.3d 1013, 1021 (2020) (reviewing the totality of the circumstances "including the interrogation site, any objective indicia of arrest, 'and the length and form of questioning'" to determine whether defendant is in custody and entitled to a *Miranda* warning)(*quoting Carroll v. State*, 132 Nev. 269, 282, 371 P.3d 1023, 1032

---

[2]Engelson also argues the evidence was insufficient to support his conviction for first-degree murder. For the reasons stated here, we are not persuaded by this argument. *See Valentine v. State*, 135 Nev. 463, 467-68, 454 P.3d 709, 715 (2019) (evidence is sufficient if, when viewed in the light most favorable to the prosecution, the evidence is such that any rational factfinder could find the elements of the crime beyond a reasonable doubt).

(2016)). Here, Engelson and Detective Fernandes were standing outside Engelson's house, and Engelson—who had not been arrested, detained, or told he was not free to leave—voluntarily described bathing Yessenia and showed Fernandes the bathroom. Moreover, Engelson was not restrained or handcuffed during this time. And as soon as Engelson stated he killed Yessenia, Fernandes stopped questioning him, handcuffed him, and read him his *Miranda* rights. Accordingly, the district court did not err in denying Engelson's motion to suppress his statement to Detective Fernandes.

Later, while in custody, Engelson was interviewed by detectives, was read his *Miranda* rights, and waived them. However, he argues he was intoxicated, hungover, sleep deprived, and mentally unstable as evidenced by the suicide smock he was placed in, and therefore, he could not have voluntarily, knowingly, and intelligently waived his *Miranda* rights.

We conclude the record does not support Engelson's arguments and instead shows he was coherent and able to recall detailed facts during the three times he spoke to detectives. *See Tucker v. State*, 92 Nev. 486, 488, 553 P.2d 951, 952 (1976) (deciding proof of the defendant's intoxication during the time of the confession will not, in the absence of additional facts demonstrating distress, prevent the admission of his confession); *Pickworth v. State*, 95 Nev. 547, 549, 598 P.2d 626, 627 (1979) (deciding a defendant's confession was voluntary where the defendant suffering from withdrawal was coherent, able to recall facts in great detail, and showed no signs of discomfort). Accordingly, the district court did not err in denying his motion to suppress the statements he made to detectives during this interview.

Another detective interviewed Engelson later in the same day, and this detective did not re-read Engelson his *Miranda* rights. The detective did ask Engelson if he remembered the earlier *Miranda* warning and understood his *Miranda* rights.

We conclude the district court did not err in denying Engelson's motion to suppress his statements in the later interview. *See Taylor v. State*, 96 Nev. 385, 386, 609 P.2d 1238, 1239 (1980) (explaining warnings do not need to be repeated each time questioning is commenced); *Koger v. State*, 117 Nev. 138, 142-44, 17 P.3d 428, 431-32 (2001) (deciding the most relevant factor in determining whether an earlier warning has become stale is the amount of time lapsed between warnings, but other factors include "the degree to which the defendant was reminded of [his] rights in the subsequent interrogation before questioning and the degree to which the defendant indicated she remembered and understood those rights prior to questioning.") Although the two interviews were conducted by different detectives, the detective that interviewed Engelson later in the same day reminded Engelson that his *Miranda* rights still applied during that later interview.[3]

Finally, we address the district court's decision to admit a witness's deposition at trial. Prior to trial, the State deposed Christopher Pullen, who had been incarcerated with Engelson. Pullen testified that Engelson related that on the day of the murder, he spanked Yessenia on two occasions, both times causing Yessenia to fall and hit her head, after

---

[3]Engelson also argues his state of mind was different for the earlier interview because he was hungover, exhausted, and mentally unstable. We conclude the record does not support this argument for the same reasons stated above.

which Engelson put Yessenia to bed. Engelson was present and represented by counsel at the deposition. Pullen promised the court and the State that he would appear at trial, but instead he disappeared after he was released from prison and did not respond when the State emailed his subpoena to the prison system. The State moved to admit the deposition during trial, explaining they had been unable to locate Pullen, and the district court granted the motion.

NRS 174.125 required the State to move to admit the deposition at least 15 days prior to trial, unless the opportunity did not exist before trial or the State was then unaware of the grounds for the motion. NRS 174.125(1), (3). The State's failure to timely file the motion here is uncontroverted, and nothing in the record suggests that the State was unaware that Pullen would likely be unavailable at trial or did not have an opportunity to timely file the motion. Moreover, even assuming the untimely motion was proper here, NRS 174.125(4) requires a party to support an untimely motion with an affidavit—something the State again did not do. *See also Hernandez v. State*, 124 Nev. 639, 648, 188 P.3d 1126, 1132-33 (2008) (explaining that to support an untimely motion the State must provide an affidavit or sworn testimony explaining its efforts to timely procure the evidence prior to the deadline), *abrogated on other grounds by State v. Eighth Judicial Dist. Court (Baker)*, 134 Nev. 104, 412 P.3d 18 (2018). Accordingly, we conclude the district court erred by admitting Pullen's deposition at trial. However, other evidence established that Yessenia was fatally injured while in Engelson's care, and because the evidence against Engelson was overwhelming we conclude this error was

ultimately harmless.[4] *See Hernandez*, 124 Nev. at 652, 188 P.3d at 1135-36 (reviewing a decision to admit prior testimony for harmless error). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Silver

_____, J.
Cadish

_____, J.
Pickering

cc: Hon. Robert W. Lane, District Judge
  Special Public Defender
  Boskovich Law Group, PLLC
  Attorney General/Carson City
  Nye County District Attorney
  Nye County Clerk

---

[4]We also conclude the cumulative effect of the errors did not violate Engelson's right to a fair trial or warrant reversal under these facts. *See Turner v. State*, 136 Nev. 545, 556, 473 P.3d 438, 449 (2020) ("When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.").